In re William Franklin WORNELL, II and Linda Kay Wornell, Debtors.

William Franklin WORNELL, II, and Linda Kay Wornell, Plaintiffs,

v.

Paul E. BERMAN, Trustee, Defendant.

Bankruptcy No. 84–03429–1.
Adv. No. 85–0195–1.
Civ. No. 86–0034–CV–W–8.

United States District Court,
W.D. Missouri, W.D.

Aug. 27, 1986.

Marilyn G. Miller, Kansas City, Mo., for plaintiffs.

Paul E. Berman, Kansas City, Mo., pro se.

## ORDER

STEVENS, District Judge.

Plaintiffs appeal from the bankruptcy court's order which denied their request for turnover of property from the trustee. The relevant facts are taken from the parties' stipulation of facts before the bankruptcy court.

Plaintiffs filed a voluntary Chapter 7 petition on November 1, 1984. On October 30, 1984, plaintiffs entered into a contract to sell certain real estate with a commercial building in Belton, Missouri for $98,500.00. The real estate was subject to a deed of trust, taxes, and commission totalling $95,439.00. On December 6, 1984, the trustee filed a notice of intent to sell the real estate.

On December 20, 1984, the prospective purchasers informed the trustee that they were withdrawing their offer to purchase the real estate because the real estate agent failed to disclose that the building's furnace was inoperable. The prospective purchasers stated that it would cost $8,000.00 to repair the furnace, and they told the trustee that they would purchase the property for $90,500.00.

At the § 341 meeting of creditors, the trustee abandoned the real estate because there did not appear to be any equity available for the benefit of unsecured creditors. In February, 1985, the property was sold for $99,500.00, and net equity of $4,579.64 was paid to the trustee. The trustee notified the plaintiffs of his intention to revoke his prior abandonment of the property and preserve the equity for the estate. It is the efficacy of that revocation which is at issue here.

The general rule is that once property has been abandoned by a trustee, the abandonment is irrevocable, regardless of any subsequent discovery that the property had greater value than previously believed. 2 *Collier Bankruptcy Manual,* Paragraph 554.06 (3rd ed. 1986); *see In Re Burch Co.,* 37 B.R. 273, 274 (Bankr.D.S.C.1983). The trustee argues, however, and the bankruptcy court agreed, that the trustee should be able to revoke the abandonment in this case based on the analysis in *In the Matter of Lintz West Side Lumber, Inc.,* 655 F.2d 786 (7th Cir.1981) and *In the Matter of Alt,* 39 B.R. 902 (Bankr.W.D.Wis.1984). We believe that the bankruptcy court's reliance on those cases is misplaced.

In *Lintz,* the trustee abandoned certain accounts receivable because he believed a creditor had a perfected security interest in the accounts. The trustee later learned that the creditor's financing statement contained an error and was unperfected. The trustee then sought to revoke his abandonment of the accounts. The court of appeals held that where there was a mistake in the original abandonment and where the purported secured creditor had not been prejudiced, the trustee could revoke his prior abandonment of the accounts. *Lintz,* 655 F.2d at 791.

In *Alt,* the trustee overlooked a possible preference action and was allowed to revoke his prior abandonment and recover the preference. As the court noted in *Alt,* the trustees in both *Alt* and *Lintz* overlooked available information before the abandonment and then sought to correct the mistake. In this matter, on the other hand, the facts do not show such a mistake on the part of the trustee. The trustee here abandoned the property based on his conclusion that the property was unproductive and then sought to revoke his abandonment only when the property was sold with resulting equity for the plaintiffs. The trustee did not argue in his brief below or before this court that he overlooked any information in making his original abandonment decision, that any information concerning the property was withheld from him, or that he did not have a reasonable

opportunity to assess the property's value. The trustee's "mistake" in this matter is not the type of mistake for which the *Lintz* and *Alt* courts carved a narrow exception to the rule against revocation of abandonment. As noted *supra,* the law is clear that a "mistake" in valuation of the property does not allow an abandonment of the property to be revoked. The *Lintz* and *Alt* analysis does not change this fundamental rule, and the holdings in those cases should not be extended to the facts of this matter.[1]

■ For example, in *In Re Sutton,* 10 B.R. 737 (Bankr.E.D.Va.1981), a trustee abandoned residential property as having inconsequential value to the estate, but he was not allowed to revoke the abandonment when the debtors realized $7,000.00 in equity upon subsequent sale of the property. The court held that the trustee's "surprise" at the sale equity was insufficient to overcome his knowing and intentional abandonment of the property. *Id.* at 741. Likewise, the trustee here did not argue that he was mislead as to the value of the property when it was abandoned,[2] and the rule is long-established that he should not be allowed to revoke that abandonment when the property later undergoes an unanticipated increase in value.

The order of the bankruptcy court is reversed, and the court is ordered to enter judgment in favor of plaintiffs and against defendant on plaintiffs' complaint. The court is further directed to order defendant to surrender possession of the proceeds from the sale of the subject real estate. Accordingly, it is

ORDERED that the *Order* of the bankruptcy court is reversed, and this matter is remanded to the bankruptcy court for further proceedings consistent with this order.

1. The court in *Lintz* took note of the rule against revoking an abandonment and pointed out that the property in question had not undergone an unanticipated increase in value. 655 F.2d at 789–91.

2. Even if the trustee were to argue that he was mislead regarding the property's value, such a contention is belied by the record. The debtors

testified at the § 341 meeting as to the value of the property and its encumbrances, and they testified that the prospective purchasers' claims about the furnace were untrue. The trustee made no attempt to seek a purchaser for the property or further investigate the value of the property, choosing instead to abandon the property.