In re Edward Wesley **HART**, aka Edward **W. Hart**, aka **E.W. Hart**, and Doris Jane **Hart**, aka Doris J. Hart, aka D. Jane **Hart**, Debtor.

**Bankruptcy No. LA 84–08461–LF.**

United States Bankruptcy Court, C.D. California.

June 17, 1987.

Danning, Gill, Gould, Diamant & Spector, Los Angeles, Cal., for trustee.

Jacoby & Meyers, Los Angeles, Cal., for debtor.

MEMORANDUM OPINION RE CHAP-
TER 7 TRUSTEE'S APPLICATION
TO LEAVE ASSET UNADMINIS-
TERED

LISA HILL FENNING, Bankruptcy Judge.

The Chapter 7 Trustee seeks permission to close a nearly three-year old case without waiting for final resolution of the estate's $30,000 claim against Universal Financial Corporation ("Universal"). Universal is itself currently in a federal court receivership. The estate holds an undisputed fractional interest in a deed of trust secured by vacant land in Union City, California. If the eventual sale of the land results in payment of the claim, a substantial distribution to the creditors of this estate will be possible. Selling the claim now, however, would realize almost nothing for the estate, and nothing else remains to be done to complete administration of this case.

Because the Chapter 7 Trustee has no control over the timing of sale, he wishes to close this case without collecting or abandoning this claim. He wants to reserve the right to reopen the case if and when the claim is paid. The United States Trustee objects to this procedure, arguing that the case is not "fully administered" within the meaning of 11 U.S.C. § 350. Under the circumstances presented here,

the Court believes the best interests of the creditors and the estate would be served by granting the Chapter 7 Trustee's Application to Leave Asset Unadministered.[1]

FINDINGS OF FACTS

1. Edward Wesley Hart, aka EDWARD W. HART, aka E.W. HART, and DORIS JANE HART, aka DORIS J. HART, aka D. JANE HART, ("Debtors") filed a joint voluntary petition under Chapter 7 of Title 11 of the United States Code on April 20, 1984.

2. Curtis B. Danning is the duly qualified and acting Chapter 7 Trustee.

3. Debtors' schedules reflect ownership of a fractional interest in a note secured by a first deed of trust against property located in Union City, County of Alameda, State of California.

4. The face value of the fractional interest is scheduled at $30,000.

5. The scheduled asset is now a claim against an entity known as Universal Financial Corporation ("Universal").

6. The assets and affairs of Universal are under the control of Robert A. Baker, Receiver in the matter of *Securities and Exchange Commission v. Universal Financial Corp., et al.*, Case No. 81–0270–WMB, United States District Court, Central District of California.

7. The Chapter 7 Trustee has notified the Receiver that the claim asserted by Debtors is property of the Debtors' Chapter 7 estate.

8. Although claim may ultimately result in payment of more than $30,000 to Debtors' estate, distribution to the Chapter 7 Trustee cannot be made until the Receiver sells certain vacant land located in Union City, California.

9. The Receiver has advised the Chapter 7 Trustee that, because the land is not marketable at this time, it is impossible to

---

1. This Court previously entered its order approving the application. The Chapter 7 trustee subsequently requested a memorandum opinion because this case presents a recurring problem

in the administration of Chapter 7 cases that has apparently not been the subject of any reported decisions.

predict when funds will be available for the payment of the claim.

10. Sale of the claim at this time is not likely to produce a significant bid.

11. No further action by the Chapter 7 Trustee is required to recover this claim. He will be notified by the Receiver if and when the property is sold.

12. Debtors' schedules reflect unsecured creditors totalling $31,506, plus a large number of potential creditors with total claims in an unspecified amount.

13. The claim against Universal is the only substantial non-exempt asset of the Chapter 7 estate. Without this claim, this Chapter 7 case is a "No Asset" case for purposes of administration.

14. The Chapter 7 estate is ready to be closed but for resolution of the claim against Universal.

15. Keeping the inactive Chapter 7 case open imposes unquantified administration costs and burdens on both the Chapter 7 Trustee and the Court. Moreover, the Chapter 7 Trustee's fees and expenses will not be paid until the case is closed. Faced with a choice of abandoning the claim or bearing the administrative costs and burdens indefinitely, the Chapter 7 Trustee has indicated he would necessarily but reluctantly choose abandonment.

16. Because a substantial distribution to the general unsecured creditors could be made if the Receiver pays this claim in the future, it would be inequitable to abandon this claim to Debtors. However, since the case is otherwise a "No Asset" case, the administrative costs of keeping the case open indefinitely are unwarranted.

17. It is in the best interests of the estate that the claim against Universal remain property of the estate.

## DISCUSSION

Because Chapter 7 trustees are not paid in "No Asset" cases until they are ready to be closed, they have incentive to administer cases promptly. Unfortunately, sheer volume of cases in this district has swamped both trustees and bankruptcy clerk's office staff, rendering "promptness" an ideal that is seldom truly achievable. Nevertheless, unnecessary delays in closing cases must be eliminated from the system to prevent it from breaking down entirely.

Section 350 of the Bankruptcy Code governs the closing of cases:

"(a) After an estate is fully administered and the Court has discharged the trustee, the court shall close the case."

"(b) A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350.

Bankruptcy Rules 5009 and 5010 essentially paraphrase this section without elaboration. No definition of the operative term "fully administered" appears anywhere in the Bankruptcy Code or Rules. *See, In re Korvettes, Inc.,* 42 B.R. 217, 220–21 (Bankr.S.D.N.Y.); *In re Silver Mill (Frozen Foods, Inc.),* 23 B.R. 179, 181 (Bankr. W.D.Mich.1982).

In "asset" cases (that is, cases where non-exempt assets are available to satisfy some claims), Bankruptcy Rule 3022 indicates that entry of a "final decree" is a prerequisite to closing. In "No Asset" cases (where non-exempt assets do not exist), the court's practice in this district is to close cases upon the filing of a "No Asset" report by the Chapter 7 trustee. Because the closing of a case is a ministerial act by the bankruptcy clerk's office, the creditors and debtor are not notified. Speed in closing a "No Asset" case is important to the Chapter 7 trustees because their compensation is administratively contingent upon closing. The United States Trustee's Office and the Bankruptcy Court are also concerned about closing cases due to their roles in the administration of the bankruptcy system.

Although essentially ministerial, the closing of a case may trigger abandonment to the debtor of scheduled property of the estate that is unadministered. Section 554 provides that:

"(c) Unless the court orders otherwise, any property scheduled under Section 521(1) of this title not otherwise adminis-

tered at the time of the closing of a case is abandoned to the debtor and administered for purposes of Section 350 of this title.

"(d) Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate."

The savings clause of Subsection (d) has been interpreted to prevent automatic abandonment only of unscheduled and unknown property. *See, In re Enriquez*, 22 B.R. 934 (Bankr.D.Neb.1982); 4 Collier on Bankruptcy ¶ 554.03, p. 554–11 (15th ed. 1986).

In this case, the asset is a scheduled contingent claim to which Section 554(c), not Section 554(d), applies. If the case is closed now, the claim will be deemed automatically abandoned and thus "administered" within the meaning of Section 554(c) —unless this Court "orders otherwise." *See, In re Atkinson*, 62 B.R. 678 (Bankr.D. Nev.1986). (Creditors could not reopen case to pursue debtor's litigation claim because it was deemed abandoned by the trustee upon closing.)

The question presented here is under what circumstances should a bankruptcy court order that an asset not be deemed abandoned under Section 554(c) upon the closing of a case?

The United States Trustee basically argues that (1) if the claim is not automatically abandoned under Section 554(a), it remains property of the estate; (2) if it remains property of the estate but has not been liquidated, then the Chapter 7 Trustee has not "fully administered" the case; and (3) therefore, the case should not be closed. This interpretation, however, is contrary to the plain meaning of the section which contemplates that circumstances might exist warranting a court-ordered exception to the automatic abandonment rule.

The United States Trustee's objection does reflect practical concerns that must be addressed. First, if claims or assets of the debtor do not have to be liquidated before closing, cases may be closed prematurely, thereby eroding the concept of the finality of closing. Second, the United States Trustee is legitimately concerned about its ability to oversee the ultimate disposition of such residual property of the estate in the absence of a Chapter 7 Trustee charged with the responsibility for administering the estate.

■ For precisely these reasons, any exception will be rare. It may be justified when the following circumstances are present:

(1) A reasonable possibility must exist that an asset valuable enough to pay substantial dividends to the creditors may be recovered in the future. A potential recovery of minimal value to the creditors would not be sufficient reason to except a claim from abandonment.

(2) The event that will trigger the reopening of the case for distribution of that asset must be well-defined. It should not require any further action by any representative of the estate, for if action is required, then the Chapter 7 Trustee should not be discharged until the necessary steps are completed.

(3) The events that may result in payment to the estate must not be likely to occur soon, for if the asset was expected to be liquidated within say, a year, the case should probably be kept open until then.

■ These rare circumstances are present here. The asset in question—the secured claim against Universal—cannot be liquidated now or in the near future for any substantial sum. Yet, if the real property collateral is sold in the distant future and the claim paid, then the scheduled creditors of this estate could receive as much as 90% of their claims, depending upon the resolution of uncertain disputed claims. The event that would trigger reopening is simple: notice from Universal's receiver to the Chapter 7 Trustee. No oversight from the United States Trustee is necessary here; Universal's receiver is already subject to the supervision of the District Court. This particular asset will not sim-

ply float in limbo indefinitely. At some point, the property will be sold. Either there will be a recovery, or the claim will be rendered worthless if the value of the property is too low.

No useful purpose would be served by requiring the Chapter 7 trustee to keep this case open, continue filing regular reports, and to delay receiving his payment on the "No Asset" estate basis.

## CONCLUSION

The unusual circumstances of this case justify excepting this claim from the automatic abandonment provisions of Section 554(c). The Chapter 7 trustee may seek reopening of this case under 11 U.S.C. § 350(b) upon receiving notice that the underlying property has been sold by the Universal Receiver and payment will be forthcoming.