**In re Charles FIGLIO and Patricia Figlio, Debtors.**

**Charles FIGLIO, Plaintiff,**

**v.**

**AMERICAN MANAGEMENT SERVICES, INC., and George Cloutier, Defendants.**

**Bankruptcy No. 94–30283.**
**Adv. No. 95–3004.**

United States Bankruptcy Court,
D. New Jersey.

March 27, 1996.

Thomas Romans, Hackensack, New Jersey, for debtor and adversary plaintiff, Charles Figlio.

Stark & Stark, Paul Masselli, Princeton, New Jersey, for adversary defendants, American Management Services, Inc. and George Cloutier.

Passamano & Hunt, Russell Passamano, Hackensack, New Jersey, for chapter 7 Trustee, Russell Passamano.

## OPINION

WILLIAM H. GINDIN, Chief Judge.

### *PROCEDURAL BACKGROUND*

This matter comes before the court as a hearing held January 18, 1996 on a motion brought by defendants, American Management Services, Inc. and George Cloutier, to dismiss the adversary complaint. The defendants argue that the case should be dis-

missed because Charles Figlio's ("debtor") cause of action was abandoned by operation of law pursuant to 11 U.S.C. § 554(c) when the bankruptcy case was originally closed. Debtor counters that the reopening of the bankruptcy proceeding on November 10, 1994 negated any technical abandonment which may have occurred by virtue of the closing of the case. The court reserved on the matter and permitted the parties to file supplemental briefs. Only debtor filed a supplemental brief, which the court received on February 2, 1996.

This court has jurisdiction over the matter pursuant to 28 U.S.C. § 1334 and 28 U.S.C. §§ 157(b)(2)(A), (B) and (O).

### FACTUAL FINDINGS

Charles Figlio and Patricia Figlio ("debtors") filed a bankruptcy petition under chapter 7 of title 11 of United States Code on January 18, 1994. Schedule B of debtors' petition lists a cause of action by Charles Figlio against American Management Services, Inc. ("AMS") estimated to be worth $25,000. The petition did not list any cause of action against George Cloutier, nor did the petition allege claims under the Massachusetts treble damage statute for unpaid wages. Ch. 149 Mass.Gen.Laws Ann. § 148. The petition also stated that the case was a "no asset case."

Russell Passamano, the chapter seven trustee, conducted the first meeting of creditors, at which time he questioned debtor, Charles Figlio, about the cause of action against AMS. Based upon debtor's testimony, the trustee decided not to pursue the cause of action because it was only worth $20,000 to $25,000 and was asserted against an out-of-state Massachusetts employer. In addition, no complaint had been filed and collection efforts were unsuccessful. In light of the expense of litigation and the existence of a priority tax levy which totaled $20,000 and would have swallowed up any recovery, the trustee did not pursue the asset.

On May 17, 1994 debtors received a discharge and, the trustee having filed a report of no distribution, the bankruptcy proceeding was administratively closed by the bankruptcy court clerk's office on May 24, 1994 as a "no asset case." Upon debtors' motion, this court reopened the bankruptcy case on November 10, 1994. Debtor, Charles Figlio, then filed an adversary proceeding complaint against AMS and its president, George Cloutier, on January 3, 1995.

The complaint seeks $50,000 for unpaid wages plus statutory treble penalties under Massachusetts law for a total of $175,000 plus counsel fees and interest. (Debtors amended their schedules on December 11, 1995 to reflect these new claims and to increase the wage claim to $175,000. Debtors also added a $5,000 note obligation due AMS.) [1]

This court denied without prejudice, a motion to dismiss the complaint by AMS and George Cloutier ("defendants") on May 30, 1995. The court denied the motion because at the time there was insufficient information as to why the trustee did not pursue the asset. The chapter 7 trustee was deposed on December 4, 1995, at which time, he testified concerning his failure to pursue the wage claim. Defendants filed the present motion to dismiss the case on December 18, 1995.

Defendants argue that the adversary complaint should be dismissed because the cause of action was abandoned pursuant to 11 U.S.C. § 554(c). They argue that the asset was scheduled on the petition, but not administered when the case was closed. Defendants contend that the abandoned asset is no longer property of the estate. Relying on *Pacor, Inc. v. Higgins,* 743 F.2d 984 (3d Cir.1984), and the allegation that the asset has been abandoned, defendants assert that the bankruptcy court lacks subject matter jurisdiction to hear the matter since the outcome of the case would have no impact on the bankruptcy estate as required under 11 U.S.C. § 1334. Debtor contends that the

---

**1.** There is a dispute as to whether the Massachusetts treble damage statute applies to this case, since the statute may have been enacted subsequent to the date the work was performed, and because the statute may not be applicable retroactively. *See* Massachusetts Title 149 Section 150. If the court were to find that the treble damage statute did not apply then the claim would be worth $50,000 which is still greater than the $25,000 amount stated in the petition, but significantly lower than the $175,000 amount claim in the complaint.

cause of action was not abandoned under 11 U.S.C. § 554(c) since the case was never "closed" within the meaning of the statute due to the fact that the bankruptcy proceeding was reopened. Debtor further argues that since the asset was not abandoned, the cause of action is property of the estate and the bankruptcy court therefore has subject matter jurisdiction over the core proceeding. In the alternative, debtor argues that the asset scheduled is so materially different from the cause of action asserted in the petition as to constitute a separate and distinct asset. Because this court finds that the case is not "closed" within the meaning of 11 U.S.C. § 554(c), and that there was thus no technical abandonment of the cause of action, the arguments of jurisdiction or whether the cause of action was materially different than the asset listed on the petition, need not be addressed.

### DISCUSSION

#### Abandonment

An asset of a bankruptcy estate may be technically abandoned by operation of law pursuant to 11 U.S.C. § 554(c) which provides as follows:

> (c) Unless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.

■ Once an abandonment occurs, it is generally irrevocable. *Killebrew v. Brewer (In re Killebrew)*, 888 F.2d 1516 (5th Cir. 1989); *In re Enriquez*, 22 B.R. 934 (Bankr. D.Neb.1982); *In re Nebel*, 175 B.R. 306 (Bankr.D.Neb.1994). Abandonment may be

revoked, however, if the debtor concealed information from the trustee, or if the trustee did not possess sufficient information about the claim. *Matter of Lintz West Side Lumber*, 655 F.2d 786 (7th Cir.1981); *In re Wornell*, 70 B.R. 153 (W.D.Mo.1986); *Matter of Alt*, 39 B.R. 902 (Bankr.W.D.Wis.1984). The mere mistake in valuation of an asset has been uniformly rejected as a basis to revoke an abandonment. *In re Wornell*, 70 B.R. 153; *In re Sutton*, 10 B.R. 737 (Bankr. E.D.Va.1981).

■ A threshold determination first must be made as to whether the cause of action in this case has in fact been abandoned by operation of law pursuant to 11 U.S.C. § 554(c). The plain language of the statute states that in order for a technical abandonment to occur, (1) the asset must have been scheduled in the bankruptcy petition or any amendments, (2) the asset must not have been administered, and (3) the case must have been closed.[2]

In this case there is no dispute that the asset was not administered. The trustee did nothing with the asset and filed a notice of no distribution in the case. A more difficult issue is whether the bankruptcy case was "closed" within the meaning of 11 U.S.C. § 554(c). There can be no abandonment by operation of law where the case is not "closed." *In re Reed*, 940 F.2d 1317 (9th Cir.1991). As noted by the Ninth Circuit, very important rights turn upon whether the case has been "closed." *Reed*, 940 F.2d at 1318. The difficulty in this case is that the case has now been reopened and the parties have questioned the effect that the reopening of the case has upon a technical as opposed to affirmative abandonment. This court

---

2. Some courts have added the additional criteria to 11 U.S.C. § 554(c), that the trustee knowingly and intelligently decide not to pursue the asset. The mere filing of a "no asset" report does not suffice to effectuate an abandonment of an asset under 11 U.S.C. § 554(c) because the trustee has a duty under the bankruptcy code to administer all assets for the benefit of the estate and the creditors. *Mele v. First Colony Life Ins. Co.*, 127 B.R. 82, 85–86 (D.D.C.1991); *Starrett v. Starrett*, 225 N.J.Super. 150, 158–59, 541 A.2d 1119, 1123 (App.Div.1988); *In re Atkinson*, 62 B.R. 678, 680 (Bankr.D.Nev.1986); *In re Schmid*, 54 B.R. 78,

80 (Bankr.D.Or.1985). In one case the court found that even where the trustee knew about the cause of action, examined the state court pleadings and examined the debtor about the lawsuit, the inquiry was not diligent enough to effectuate an abandonment under section 554(c) because the trustee did not consult litigation counsel or make any independent investigation into the merits of the case. *Mele*, 127 B.R. at 86.

Because this court finds that the case is not "closed" within the meaning of 11 U.S.C. § 554(c), we need not reach the issue of the trustee's knowing and intelligent abandonment.

must next address the effect of reopening a case pursuant to 11 U.S.C. § 350(b).[3]

### Effect of Reopening the Bankruptcy Case

■ 11 U.S.C. § 350(b) permits the bankruptcy court to reopen a case, "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). The decision to reopen the case is within the broad discretion of the bankruptcy court. *In re Young*, 70 B.R. 968, 969 (Bankr.E.D.Pa. 1987); *In re Searles*, 70 B.R. 266 (D.R.I. 1987); *In re White*, 104 B.R. 951 954 (S.D.Ind.1989); *Matter of Becker's Motor Transportation, Inc.*, 632 F.2d 242, 245 (3d Cir.1980) (discussing bankruptcy court's broad discretion to reopen cases after an estate has been administered under the Bankruptcy Act of 1898). Decisions to reopen a case are reviewed under the abuse of discretion standard. *Judd v. Wolfe (In re Wolfe )*, 78 F.3d 110, 116 (3d Cir.1996).

■ Courts have uniformly held that the effect of reopening a case is "to put the bankruptcy estates back into the process of administration ... The original bankruptcy is revived including all the procedural and substantive rights of the debtor." *In re Cassell*, 41 B.R. 737, 740 (Bankr.E.D.Va.1984) (citations omitted) (redemption of automobile after discharge). The cases have interpreted the term "closed" in various bankruptcy contexts to mean finally closed, that is, after reopening the effect is that the case has not yet been closed. *In re Petty*, 93 B.R. 208 (9th Cir. BAP 1988) (analyzing effect of reopening and the word "closed" within context of 11 U.S.C. § 546(a)(2)); *White v. Boston*, 104 B.R. 951 (S.D.Ind.1989) (same); *In re Alt*, 39 B.R. 902 (Bankr.W.D.Wis.1984) (analyzing effect of reopening within context of revoking abandonment and 11 U.S.C. § 546); *In re Schroeder*, 173 B.R. 93 (Bankr.D.Md. 1994) (analyzing effect of reopening and the word "closed" within the context of 11 U.S.C. § 522 lien avoidance); *In re Cassell*, 41 B.R. 737 (Bankr.E.D.Va.1984) (analyzing effect of reopening and the word "closed" within the

context of 11 U.S.C. § 722 debt reaffirmation and discharge).

The cases rely on the analysis contained in the early case of *Bilafsky v. Abraham*, 183 Mass. 401, 67 N.E. 318 (1903):

> It seems to us that the word "closed" in this provision [section 11d of the Bankruptcy Act of 1898] means properly and finally closed, and if upon proceedings in the court of bankruptcy, it appears that order should be issued reopening the estate for purpose of having it fully administered, it should be held, after the reopening, that the estate is opened for the purpose of bringing suits, even though more than two years have elapsed since the entry of the original erroneous order. In this way, we think, effect will be given to the purpose of the Congress to provide for a full and proper administration of the estates of bankrupts.

*Bilafsky v. Abraham*, 67 N.E. at 319. *See also* 4 Collier on Bankruptcy, p. 546.02 (15th ed. 1995) (citations omitted).

The 9th Circuit Bankruptcy Appellate Panel explained that any other interpretation of the word "closed" would defeat the very purpose of reopening the case which is to administer assets.

> Once it has been established that the case was not properly closed and may be reopened to administer the assets of the debtor's estate it would be anomalous to bar the collection of the very assets sought to be recovered because the case was closed. The primary reason for reopening the case would be prohibited. Accordingly, the word "closed" in § 546(a)(2) must be read to mean properly and finally closed.

*In re Petty*, 93 B.R. at 212.

Since the within case was reopened on November 10, 1994, the effect of the reopening is to revive all of the substantive and procedural rights in bankruptcy and reinstate the administration of the estate, including the administration of the debtor's asset,

---

**3.** The recent Third Circuit case, *Judd v. Wolfe (In re Wolfe )*, 78 F.3d 110 (3d Cir.1996) held that there was no reason to reopen a case to amend a petition to add creditors for the purpose of insur-

ing that those creditors' claims are discharged. However, the case further held that there were clearly other reasons to reopen. *Id.* at 116–117.

namely, the cause of action against AMS and George Cloutier. Thus, this court finds that the case was never "closed" within the meaning of 11 U.S.C. § 544(c) and consequently the lawsuit was not abandoned.

■ The above result suggests a concern that the certainty afforded parties by the finality of closed cases will be lost due to the ever-present threat of a case being reopened and revived. This concern must be balanced against the need for full administration of the assets of the estate. This is especially true in the current climate where trustees are under pressure to close "no asset" cases promptly and sometimes prematurely before all of the assets are administered. *See In re Hart*, 76 B.R. 774 (Bankr.C.D.Cal.1987). In fact, the closing of the case is a ministerial act done by the clerk's office, often without notice to the parties. *Id.* Indeed parties are often surprised upon filing papers in prosecution of the bankruptcy proceeding, to find out that the case has been closed. This court finds that the above concerns are resolved by the balancing approach used by courts in determining motions to reopen.

■ A decision to reopen is a fact sensitive decision which often involves a balancing between the certainty afforded parties by finality against the benefits of full and proper administration of all assets.[4] *Matter of Alt*, 39 B.R. at 904 (Bankr.W.D.Wis.1984). As a safeguard against bankruptcy cases existing in perpetuity, the doctrine of laches operates as a bar against reopening a case. *White v. Boston*, 104 B.R. 951, 957 (S.D.Ind. 1989) (laches is defense to motion to reopen); *See also Reed*, 940 F.2d at 1324 (court found that facts did not amount to laches, although it was a defense to motion to reopen). Some courts have proposed a sliding scale in accommodating the needs of all of the parties in motions to reopen. "The longer the period between the closing and reopening, the more cause must be shown to warrant a reopening." *White v. Boston*, 104 B.R. at 957–58 (citing *In re Penland*, 34 B.R. 536, 539 (Bankr.E.D.Tenn.1983)).

Numerous courts have reopened cases to permit administration of an asset, even where that asset was alleged to have been abandoned under 11 U.S.C. § 554(c). *In re Fossey*, 119 B.R. 268 (D.Utah 1990) (bankruptcy court abused discretion in denying motion to reopen, court found asset was not abandoned by operation of law because the cause of action was not properly scheduled); *Mele v. First Colony Life Ins. Co.*, 127 B.R. 82 (D.D.C.1991) (case could be reopened to pursue claim into which the trustee did not diligently inquire); *In re Hart*, 76 B.R. 774 (Bankr.C.D.Cal.1987) (case could be reopened and an exception made to 554(c) abandonment in unusual circumstances); *cf. In re Atkinson*, 62 B.R. 678 (Bankr.D.Nev. 1986) (motion to reopen denied where case was open for three years with no administration of asset, where trustee waited more than one year after the case was closed before moving to reopen, and debtors acted in reliance on abandonment of the asset.)

■ The facts in this proceeding warrant a reopening of the case. The debtors filed their petition on January 18, 1994. The first meeting of creditors was held on April 20, 1994 and the debtors received their discharge on May 17, 1994. Unbeknownst to debtor, the bankruptcy court clerk's office administratively closed the case on May 24, 1994, only five months after the bankruptcy petition was filed. On September 7, 1994, after realizing that the case was closed, and desiring to file an adversary complaint, the debtor filed a motion to reopen the case which was granted on November 10, 1994. This is not a case where the bankruptcy proceeding languished for years with neither the trustee nor the debtor making any attempt to administer the assets of the estate. Rather, the case was closed only five months after the filing of the petition. In addition, debtor moved promptly to reopen the case. Thus, laches does not apply to bar reopening. Furthermore, the court found the reason to reopen the case for the purpose of administering an asset for the benefit of the creditors to

---

**4.** Although the parties do not take issue with the propriety of this court's reopening of the case, this court will discuss its analysis and justification for reopening since the act of reopening has serious impact on the bankruptcy proceeding and the prospective actions of the trustee in pursuing the estate's claim against the defendants.

**426**

be compelling. Thus, the reopening of the case was appropriate.

### CONCLUSION

For all of the above reasons, this court finds that the reopening of the case was appropriate, and that the effect of the reopening of the case on November 10, 1994 was to revive all of the bankruptcy procedural and substantive rights. Therefore, the case was never "closed" within the meaning of 11 U.S.C. § 554(c) and the cause of action commenced by debtors against AMS and George Cloutier was not abandoned by operation of law pursuant to that section. The court therefore has jurisdiction to hear this case. The motion to dismiss is denied.

Counsel for debtor shall submit an appropriate form of order within ten (10) days.