In re Kenneth A. ZINCHIAK D/B/A Zinchiak Manufacturing Company, Debtor.

CIT Small Business Lending Corporation as Successor to Newcourt Small Business Lending Corporation F/K/A AT & T Small Business Lending Corporation, Movant,

v.

Kenneth A. Zinchiak D/B/A Zinchiak Manufacturing Company and Kathleen K. Zinchiak, Respondents.

No. 99–10113.

United States Bankruptcy Court, W.D. Pennsylvania.

July 3, 2002.

---

Dennis J. Roman, Esq., Pittsburgh, PA, Attorney for CIT Small Business Lending Corporation.

P. Raymond Bartholomew, Esq., Hermitage, PA, Attorney for Kenneth A. Zinchiak and Kathleen K. Zinchiak.

Gary J. Gaertner, Esq., Pittsburgh, PA, Attorney for PNC Mortgage Corporation.

Gary V. Skiba, Esq., Erie, PA, Attorney for Alegis Group, Inc.

William Pineo, Esq., Meadville, PA, Trustee and Attorney Pro se.

MOTION TO REOPEN BANKRUPTCY CASE AND TO FIX FAIR MARKET VALUE OF REAL PROPERTY SOLD.

WARREN W. BENTZ, Bankruptcy Judge.

*OPINION*

*I. Summary*

Debtor owns a commercial premises. Debtor and wife own a residence. Mortgagee has a blanket mortgage on the commercial premises and the residence. Mortgagee is granted relief from stay as to the commercial premises, but not as to the residence. Mortgagee forecloses on the commercial property and obtains a sheriff's deed on June 12, 2000. Mortgagee is granted relief from stay as to the residence on January 9, 2001. Mortgagee initiates a proceeding in this Court on June 29, 2001 (and also in the Court of Common Pleas sometime before July 9, 2001) to establish its deficiency with respect to its mortgage on the residence. We hold that the deficiency judgment action (to determine the amount of the mortgage claim against the residence) filed before July 9, 2001 was timely since it was initiated within six months of the date on which the mortgagee was granted relief from stay to foreclose on the residence. This is for the reason that the automatic stay which remained in place as to the residence until January 9, 2001 prevented the mortgagor from any act to recover its claim against the residence, and that a proceeding to fix the amount of the mortgage claim against the residence would have been such an act.

*II. Introduction*

Kenneth A. Zinchiak d/b/a Zinchiak Manufacturing Company ("Debtor") commenced the within case on January 29, 1999 with the filing of a voluntary Petition under Chapter 11 of the Bankruptcy Code. The case was converted to a proceeding under Chapter 7 of the Bankruptcy Code on June 22, 1999. After years of asserting that the automatic stay must remain in place to protect the Debtor's equity in a residential property located at 967 Lexington Drive, Hermitage, Mercer County, Pennsylvania (the "Residence") from foreclosure, Debtor finally conceded that it had no equity in the Residence and all of the various lenders asserting claims against the Residence were granted relief from stay. Debtor was granted a discharge and a final decree was entered on March 28, 2001 closing the case.

CIT Small Business Lending Corporation as successor to Newcourt Small Business Lending Corporation f/k/a AT & T Small Business Lending Corporation ("Newcourt") most arduously pursued relief from stay during the course of the bankruptcy case. It is now before the Court with a MOTION TO REOPEN BANKRUPTCY CASE AND PETITION TO FIX FAIR MARKET VALUE OF REAL PROPERTY SOLD ("Motion to Reopen"). Newcourt files the Motion to Reopen in response to a Complaint filed by Alegis Group, L.P. in the Court of Common Pleas of Mercer County, Pennsylvania. Alegis Group, L.P. asserts that it is the assignee of TMS Mortgage Inc. d/b/a The Money Store (Alegis Group, L.P. and TMS Mortgage, Inc. d/b/a The Money Store, collectively the "Money Store") which holds a third mortgage on the Residence. In the Mercer County Complaint, Money Store seeks a determination that Newcourt has been paid in full and an order which directs Newcourt to satisfy its mortgage.

The dispute is over whether Newcourt is in compliance with the requirements and time limitations of the Pennsylvania Deficiency Judgment Act. See 42 Pa. Cons.

Stat. Ann. § 8103 (deficiency judgments) and 42 Pa. Cons.Stat. Ann. § 5522(b)(2) (six months limitation).

### III. Jurisdiction

Resolution of the issue requires an analysis of the effect of the automatic stay during the pendency of the bankruptcy case. We address that issue as a core matter pursuant to 28 U.S.C. § 157(b)(2)(A) and (G). The matters are also related to the bankruptcy case, as a finding that Newcourt's mortgage must be satisfied might leave sufficient equity to allow for a sale of the Residence by the Chapter 7 Trustee to provide for a distribution to creditors of the estate.

### IV. Factual and Procedural Background

On April 8, 1999, Newcourt filed its Motion for Relief from Automatic Stay ("Motion"). Newcourt sought relief from stay to pursue its interests in the real estate used in the Debtor's business located at South Mosiertown Road, RD # 2, Meadville, Crawford County, Pennsylvania ("Business Property"), the personal property used in Debtor's business operation ("Personal Property") (or the Business Property and the Personal Property, collectively "Business Assets"), and the Debtor's Residence. A hearing on the Motion was self-scheduled for May 3, 1999.

On April 12, 1999, Debtor filed a request to convert the case from Chapter 11 to Chapter 7. An Order converting the case to Chapter 7 was entered on April 22, 1999. William Pineo, Esq. ("Trustee") was appointed as Chapter 7 Trustee.

The Debtor and the Trustee filed Responses to Newcourt's Motion. Debtor acknowledged the principal balance of $415,000 due Newcourt and stated that Newcourt's claim of $449,831 includes interest and late charges. Debtor respond-

ed that the Personal Property had a value of $253,000 and the Business Property had a value of $400,000. Therefore, Debtor asserted that Newcourt would be paid in full from liquidation of the Business Assets and should not look to the Residence except in the event of a deficiency after liquidation of the Business Assets.

It appearing from the Debtor's assertions of value that there might be some equity for the benefit of unsecured creditors, the Trustee asked that the stay remain in effect.

The initial hearing to consider the Motion was held on May 3, 1999 just days after the Trustee was appointed. Newcourt agreed to continue the Motion generally to allow the Trustee an opportunity to determine whether the Debtor's property could be marketed for a price which would render a benefit for the estate.

Newcourt requested a continued hearing which was held on September 7, 1999. Newcourt obtained a current appraisal of $75,000 for the Personal Property and indicated that it had received updated information that the value of the Business Property was $220,000. The Trustee was convinced that there was no equity for the benefit of creditors and expressed consent to Newcourt's Motion. Debtor, however, continued to assert that the value of the Business Property was $400,000 and that Newcourt could be paid in full, or nearly in full, from liquidation of the Business Assets. Debtor did not oppose the granting of relief from stay as to the Business Assets but continued to oppose relief as to the Residence until such time as liquidation of the Business Assets was completed and a determination made as to any balance due Newcourt for which it had to look to the Residence.

There was some discussion at the September 7, 1999 hearing about how this might be accomplished.

MR. PINEO: Well, Mr. Sanders, are you saying that you would intend to conduct a deficiency proceeding in State Court, and the State Court would ascertain the amount of the deficiency?

MR. SANDERS: My motion would be that if that was required, that Newcourt would do, in order to be made whole. If that—if we go that far.

MR. PINEO: Well, it seems to me that either the Bankruptcy Court or the Common Pleas Court has to make a determination of the deficiency owing. And our first reaction was that it would be simpler to have that in the Bankruptcy Court in a supplemental matter to this pending relief from stay motion. That is, after you have sold the commercial real estate and equipment.

MR. SANDERS: Well, Your Honor—

THE COURT: I'm not sure that the— does the Common Pleas Court have any jurisdiction to tell the creditor which collateral he's going to execute on first?

MR. SANDERS: No, it was [sic] not. But as Mr. Bartholomew alluded to, with regard to the deficiency judgment, if there was a decision to go after the debtor and possibly, I guess, his wife in a sense on the mortgage for a deficiency, yes, there is a procedure where we would have to petition the Court of Common Pleas. There would be a hearing, an opportunity for both parties to bring in appraisals and their experts, et cetera, yes. There is a procedure to contemplate it.

Hopefully—again, Your Honor, we certainly are hoping that we would be made whole between the commercial real estate and the commercial personal property, but we certainly don't want our hands tied at this point in time. We just don't see that the Bankruptcy Court has that power under the Bankruptcy Code.

THE COURT: Mr. Bartholomew, if the creditor can only execute on one of the assets at a time, or the—I would think you would be able to execute on the commercial real estate and the commercial equipment together. And then they have to bring the action for the deficiency judgment, it seems like that would give you adequate time to do whatever you want to do.

MR. BARTHOLOMEW: Just so there's some forum where the debtor can raise questions about what was sold and what Newcourt received for it, and then calculate what's owing. Whether it's Bankruptcy Court or State Court, I don't guess we care. We're just wanting to know that there is some forum for us to address those issues.

MR. SANDERS: Your Honor, I believe that they can—those issues can be raised if and when we would ever go after the residential real estate.

Transcript of Hearing of September 7, 1999 at 11–13.

Following the September 7 hearing, the Court issued an Order dated September 29, 1999 which granted Debtor's request that Newcourt proceed first to liquidate the Business Assets. The relief from the automatic stay granted Newcourt was limited to the Business Assets. The Order specifically provided that "[t]he Motion is deferred as to the [Residence]."

Newcourt's right to proceed against the Residence if it was not made whole upon the completion of liquidation of the Business Assets was clearly preserved. It was stated that if and when Newcourt determined the need to proceed against the Residence, that there would be a forum within the Bankruptcy court or State Court for Debtor to raise questions about the balance.

On December 20, 1999, Money Store, as servicer for the mortgagee of record,

which holds a third mortgage on the Residence behind the first mortgage of PNC Bank and the second mortgage held by Newcourt, filed its Motion for Relief from the Automatic Stay. Money Store asserted that the value of the Residence was $260,000 and that Debtor had no equity. Debtor responded that the value was $350,000. Debtor stated that "[w]hether there is equity in the Hermitage residence will not be known until Newcourt Financial has exhausted its remedies against the [Business Assets]." In opposition to Money Store's averment that cause exists to have the automatic stay terminated, Debtor stated that "[u]ntil it is known whether Newcourt Financial has a deficiency balance to assert against the Hermitage residence, none of the parties in interest can address the question whether there is value to reach the movant's third mortgage lien. Moreover, until it is known whether and to what extent Newcourt Financial has a deficiency claim to assert against the property, Newcourt Financial could not intelligently participate in the bidding at a state court Sheriff's sale." After a January 10, 2000 hearing on Money Store's motion, the Court entered an Order dated January 25, 2000 wherein Money Store's motion was "deferred until it is determined whether Newcourt Financial, which has a prior blanket lien on the residence and the commercial property, will have a deficiency balance as to the residence." The order further provided that "[t]he Debtor shall further report to the Court by July 15, 2000."

The subject of relief from stay on the Residence was next before the Court on February 22, 2000 on the motion of PNC Mortgage Corporation ("PNC") for relief. PNC holds the first mortgage against the Residence. PNC asserts a balance of $118,260 and avers that Debtor has failed to make any postpetition payment. Debtor responds that it disputes the balance and, in any event, PNC is adequately protected as the value of the Residence is $350,000. A hearing on PNC's motion was held April 3, 2000. It was discussed that Newcourt had obtained relief from stay as to the Business Assets which it was in the process of liquidating and that Newcourt was to proceed first against collateral other than the Residence and then advise the Court of its status. By Order dated April 4, 2000, PNC's motion was continued to June 26, 2000 and Debtor was directed to inquire and report to interested parties and the Court on the status of the liquidation of the Business Assets by Newcourt.

On May 30, 2000, the Trustee filed a Report of No Distribution. The Trustee concluded that there was no equity in the Residence available for the benefit of the estate. In response to the Order of April 4, 2000, counsel for Debtor made inquiry of Newcourt as to the status of its liquidation efforts. Counsel for Newcourt advised the Debtor that the Personal Property had been liquidated and that a Sheriff's Sale of the Business Property was fixed for June 2, 2000.

A continued hearing on PNC's motion was held on June 26, 2000. Counsel for Debtor again advised that the value of the Residence was $350,000; that PNC had a first mortgage of $113,000 and Money Store had a third mortgage of $97,000, which leaves equity of approximately $130,000 as collateral for Newcourt to the extent that it is not paid from the sale of the Business Assets. Counsel for Debtor further advised that Newcourt had title to the Business Property and was marketing it. PNC's Motion was continued until October 2, 2000 on the condition that Debtor commence some payment to PNC as detailed in an Order dated June 27, 2000.

On September 15, 2000, Debtor filed an updated STATUS REPORT RE NEWCOURT FINANCIAL LIQUIDATION STEPS. Debtor attaches a June 13, 2000 letter from counsel for Newcourt in which it is indicated that the Sheriff's Sale of the Business Property took place on June 2, 2000. Newcourt was the successful purchaser for a bid of costs and taxes and that as soon as Newcourt receives the Sheriff's Deed, it will begin marketing the property. Counsel for Newcourt advises that Debtor will be kept informed of information regarding the marketing efforts. The Status Report by Debtor states that "[w]hether Newcourt Financial has calculated a deficiency claim to assert against the debtor's Mercer County residence is unknown at this time."

A continued status conference on PNC's Motion was held on October 2, 2000 at which Debtor conceded for the first time that there was no equity available from the Residence for the Debtor or unsecured creditors. PNC filed a Declaration which indicates that as of October 2, 2000, the balance on its first mortgage is $120,564.60. Newcourt filed an appraisal dated August 11, 2000 which indicates that the value of the Business Property is $175,000 and a real estate broker's opinion that the listing price of the Business Property should be $195,000.

The Court issued a Memorandum on November 1, 2000 in regard to the pending Motions for relief to pursue the Residence filed by PNC, Newcourt and Money Store. The Court discussed the range of values for the Residence and the balances due the various lenders including Newcourt:

A wide range of values for the Property have been set forth. The Debtor asserts the highest value, $350,000, as stated in a December, 1997 appraisal. PNC asserts a value of $229,000–239,000 based on a January, 2000 broker's opinion.

PNC holds a first mortgage against the Property and asserts a balance of $120,564. Debtor asserts that the $120,564 must be reduced by $9,400 paid pursuant to prior court order, or a balance of $111,164.

Newcourt holds a blanket mortgage which covers the Property, an additional commercial property and business equipment and fixtures. Newcourt was previously granted relief from stay to pursue the commercial property and the business equipment and fixtures. The business equipment and fixtures have been liquidated. After application of the proceeds from the sale, Newcourt is owed approximately $357,000 plus additional interest from June, 1998 forward. Newcourt purchased the commercial property at sheriff sale, has completed environmental work and is ready to list the commercial property for sale. Newcourt has obtained an appraisal of $175,000 and a broker's opinion of value at $195,000. The commercial property will be listed for sale at a price of $195,000. Even if the commercial property sells for full list price without any deduction for costs of sale, Newcourt will look to the residential property for a minimum of $165,000 to satisfy its claim.

Money Store holds a third mortgage against the Property and asserts a balance of approximately $89,000.

Debtor has now conceded that it has no equity in the Property. From the facts presently before the court it appears that there is no equity under any set of circumstances:

| | |
|---|---|
| Maximum Value of Property | $ 350,000 |
| PNC Mortgage (minimum amount) | (111,164) |
| Newcourt Mortgage (minimum amount) | (165,000) |
| Money Store | (89,000) |
| Negative Equity | $ (15,164) |

It is extremely likely that the value of the Property will be less and that the Movants' claims will be higher. There appears to be no reason to further delay the Movants from proceeding against their collateral.

The Money Store suggests that the value of the commercial property and the two lots which comprise the residential property may be higher. It requests time to obtain appraisals. We will afford the Money Store an opportunity to obtain appraisals. If the appraisals continue to reflect negative equity, relief from stay will be granted to all parties.

In an Order accompanying the Memorandum, we afforded Money Store 45 days to obtain an appraisal and fixed a continued hearing for January 8, 2001.

At the hearing on January 8, 2001, it was reported that Money Store had obtained an appraisal which was $10,000 higher than Newcourt had previously indicated, but even with an additional $10,000 in value, there was no equity in the Debtor's Residence. It was determined that relief from stay should be granted to all of the lenders to pursue State Court remedies against the Residence. Relief from Stay was granted by Order dated January 9, 2001. The Debtor received a discharge on March 28, 2001 and a Final Decree closing the case was issued the same date.

On or about April 20, 2001, Money Store filed a COMPLAINT TO COMPEL DISCHARGE OF MORTGAGE AND SATISFACTION OF SAME in the Court of Common Pleas of Mercer County, Pennsylvania ("Mercer County Complaint"). In the Mercer County Complaint, Money Store seeks to have Newcourt's mortgage declared discharged and marked satisfied of record. Money Store asserts that Newcourt failed to file a petition to fix the fair market value of the Business Property within six months of the delivery of the

deed as required by the Pennsylvania Deficiency Judgment Act, 42 Pa. Cons.Stat. Ann. § 8103 (deficiency judgments) and 42 Pa. Cons.Stat. Ann. § 5522(b)(2) (six month limitation). Money Store further asserts that Newcourt failed to file a petition to fix the fair market value of the Business Property within the additional period of thirty days after notice of termination of the automatic stay, citing 11 U.S.C. § 362 and § 108(c)(2). Money Store posits that Newcourt's mortgage should be declared discharged and marked satisfied of record as the failure to timely file a petition for determination of fair market value creates an irrebuttable presumption that Newcourt was paid in full on the underlying obligation. On or about June 27, 2001, Newcourt filed PRELIMINARY OBJECTIONS to the Mercer County Complaint in which it asserts that the Court of Common Pleas of Mercer County lacks jurisdiction since the Business Assets were located in Crawford County.

The matter presently pending before this Court is the Motion to Reopen which Newcourt filed on June 29, 2001. Newcourt asserts that the Bankruptcy Court has either exclusive or concurrent jurisdiction with the Court of Common Pleas of Crawford County, Pennsylvania, over this matter relating to a deficiency judgment against the Debtor, and that the case should be reopened pursuant to Fed. R. Bankr.P. 5010 and 11 U.S.C. § 350(b), and that this Court should fix the fair market value of the Business Property at the amount of $140,000 for purposes of the Deficiency Judgment Act.

Debtor and Money Store oppose the Motion to Reopen. Debtor asserts that under 11 U.S.C. § 350(b), a case may be reopened "to administer assets, to accord relief to the debtor, or for other cause" and that there is no "cause" to warrant

reopening of this case. Debtor asserts that the deadline for filing a petition to seek a deficiency in either the state court or the bankruptcy court has expired; that Newcourt is barred from seeking a deficiency judgment at this time; that Newcourt's failure to file a deficiency petition within the statutorily-mandated time frame creates an irrebuttable presumption that Newcourt has received full satisfaction; and that the bankruptcy court has no jurisdiction over Debtor's spouse, Kathleen Zinchiak, who should not be a respondent to the Motion. Money Store raises the same issues in its response.

Newcourt has filed similar petitions to fix fair market value of property sold in both the Court of Common Pleas of Mercer County and Crawford County, but avers that such actions were filed solely as a precaution due to time limitations and that it would be most appropriate for the bankruptcy court to rule on the issues. In addition, Debtor has filed a Petition to Mark Judgment Satisfied, Released and Discharged in the Court of Common Pleas of Crawford County. No action has been taken in these state court actions pending our disposition of the Motion to Reopen.

### V. Discussion

#### A. Reopening of Case

■■■ "A case may be reopened . . . to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). *See Judd v. Wolfe*, 78 F.3d 110 (3rd Cir.1996). The decision to reopen is within the broad discretion of the bankruptcy court. *In re Figlio*, 193 B.R. 420, 424 (Bankr.D.N.J.1996); *In re Becker's Motor Transportation, Inc.*, 632 F.2d 242, 245 (3rd Cir.1980) (discussing bankruptcy court's broad discretion to reopen cases). The present issues involve the effect of the automatic stay during the duration of the bankruptcy case and an interpretation of

this court's orders granting partial and eventually complete relief from stay. A bankruptcy court can provide the best interpretation of its own order. *National Shopmen Pension Fund v. Folger Adam Security, Inc.*, 274 B.R. 1 (D.D.C.2002). Therefore, it is appropriate to reopen the case.

#### B. Merits

■■ "The Deficiency Judgment Act was passed in the 1940s to remedy a practice prevalent among judgment creditors during the Great Depression." *First Federal Savings & Loan Assn. of Carnegie v. Keisling*, 746 A.2d 1150, 1155, 2000 Pa.Super. 35 (Pa.Super.2000) (citations omitted).

> Prior to the Deficiency Judgment legislation, [a judgment creditor,] purchasing at his [execution] sale, was required to credit on the judgment only the price, however minimal, at which the property was sold to him by the sheriff; he was then permitted to issue additional executions to recover the balance of the judgment. Obvious hardships [occurred] resulting from that rule . . .

*Id., quoting Union Trust Co. of New Castle v. Tutino*, 353 Pa. 145, 148, 44 A.2d 556, 558 (1945).

In *First Federal Savings Loan Assn. of Carnegie*, the Court continued:

> In view of these circumstances, we have held that the purpose of the Deficiency Judgment Act is to eliminate the potential that a debtor might face execution multiple times on the same judgment when the fair market value of mortgaged assets already sold would have been sufficient to satisfy the underlying debt. *See Reliable Sav. and Loan Ass'n of Bridgeville v. Joyce*, 385 Pa.Super. 536, 561 A.2d 804, 807 (1989). Accordingly, the provisions of the Deficiency Judgment Act to operate "to protect

judgment debtors whose real estate is sold in execution, by requiring the [judgment creditor] to give credit for the [fair market] value of the property [the judgment creditor] purchased at his execution and not merely to credit the price at which [the property] was sold." *PNC Bank, Nat'l. Ass'n v. Balsamo,* 430 Pa.Super. 360, 634 A.2d 645, 654 (1993) (quoting *Tutino,* 353 Pa. at 148, 44 A.2d at 558).

To effectuate the purpose of the Act, the legislature provided for judicial oversight whenever the judgment creditor purchases the mortgaged property at execution "and the price for which such property has been sold is not sufficient to satisfy the amount of the judgment, interest and costs...." 42 Pa.C.S. § 8103(a). Where a deficiency occurs under these circumstances, the Act requires that the "judgment creditor shall petition the court to fix the fair market value of the real property," regardless of whether the creditor effectuated its purchase directly or indirectly. *Id.*

*Id.* at 1155.

The relevant provisions of the Deficiency Judgment Act provide as follows:

§ 8103. Deficiency judgments

(a) General rule.-Whenever any real property is sold, directly or indirectly, to the judgment creditor in execution proceedings and the price for which such property has been sold is not sufficient to satisfy the amount of the judgment, interest and costs and the judgment creditor seeks to collect the balance due on said judgment, interest and costs, the judgment creditor shall petition the court to fix the fair market value of the real property sold. The petition shall be filed as a supplementary proceeding in the matter in which the judgment was entered.

. . .

(d) Action in absence of petition.-If the judgment creditor shall fail to present a petition to fix the fair market value of the real property sold within the time after the sale of such real property provided by section 5522 (relating to six months limitation), the debtor, obligor, guarantor or any other person liable directly or indirectly to the judgment creditor for the payment of the debt, or any person interested in any real estate which would, except for the provisions of this section, be bound by the judgment, may file a petition, as a supplementary proceeding in the matter in which the judgment was entered, in the court having jurisdiction, setting forth the fact of the sale, and that no petition has been filed within the time limited by section 5522 to fix the fair market value of the property sold, whereupon the court, after notice as prescribed by general rule, and being satisfied of such facts, shall direct the clerk to mark the judgment satisfied, released and discharged.

42 Pa. Cons.Stat. Ann. § 8103(a), (d), (2002 Supp. Pamph.).

The six month limitation on the commencement of a Deficiency Judgment Action is found in 42 Pa. Cons.Stat. Ann. § 5522(b)(2):

(b) Commencement of action required.-The following actions and proceedings must be commenced within six months;

. . .

(2) A petition for the establishment of a deficiency judgment following execution and delivery of the sheriff's deed for the property sold in connection with the execution proceedings referenced in the provisions of section 8103 (relating to deficiency judgments).

42 Pa. Cons.Stat. Ann. § 5522(b)(2) (2002 Supp. Pamph.).

42 Pa. Cons.Stat. Ann. § 5535(b) (1981) provides:

> (b) Stay of matter.-Where the commencement of a civil action or proceeding has been stayed by a court or by statutory prohibition, the duration of the stay is not a part of the time within which the action or proceeding must be commenced.

*Id.*

The stay which prevented Newcourt from pursuing collection as against the residence was the automatic stay under 11 U.S.C. § 362. We lifted the stay on January 9, 2001. That stay was precisely the kind of stay referred to in 42 Pa. Cons. Stat. Ann. § 5535(b).

The six month time period for the commencement of a deficiency judgment action does not lapse until six months after termination of the automatic stay provided by § 362 of the Bankruptcy Code. When Newcourt was granted relief from stay as to the Business Assets, a determination as to the grant of relief from stay as to the Residence was expressly deferred at Debtor's insistence. There was no attempt by Newcourt to defeat the purpose of the Deficiency Judgment Act. Debtor insisted that the stay remain in place as to the Residence while at the same time, it was clear to everyone in the case that Newcourt would eventually seek a deficiency judgment and proceed against its interest in the Residence either in this court or the state court, if it was not made whole from liquidation of the Business Assets. Debtor remained steadfast that Newcourt could obtain full payment from the Business Assets until shortly before all creditors with an interest in the Residence received relief from stay by Order dated January 9, 2001.

■ The intent of the Deficiency Judgment Act is to protect a debtor from self-dealing by a lender. It requires judicial oversight to see that the debtor receives credit for the fair market value of the property foreclosed upon. At Debtor's insistence, we prevented Newcourt from acting to enforce its lien against the Residence until January 9, 2001. Until that date, we provided the judicial oversight. Prior to the granting of relief from stay to allow Newcourt (and the other lenders) to pursue the Residence, any action to pursue a deficiency judgment would have been viewed as an action to enforce Newcourt's claim against the Residence, an action that, despite repeated requests from Newcourt, had been forbidden by this Court until January 9, 2001.

■ Newcourt was unable to assert its deficiency judgment claim prior to that date and accordingly had six months from January 9, 2001 to timely initiate a Deficiency Judgment action. In addition to the matter presently pending in this Court, we understand that such an action (or actions) have been filed in state court during the appropriate time frame (i.e., within six months of January 9, 2001). We see no reason to relinquish this matter to the state court for resolution. *see McCartney v. Integra National Bank North,* 106 F.3d 506, 512 (3d Cir.1997). Resolution of Newcourt's deficiency judgment claim will have an undeniable affect on the value of the assets, which might be available for the benefit of creditors. The determination is therefore relevant to case administration.

The determination of Newcourt's deficiency, if any, necessarily includes a determination of the deficiency amount against the Debtor's non-debtor spouse. Without determining the deficiency amount against the spouse, we would be unable to fully adjudicate the rights and liabilities of the debtor. Accordingly, we have "related to" jurisdiction to determine the deficiency amount not only against the Debtor, but

also against the non-debtor spouse. *See Abramowitz v. Palmer*, 999 F.2d 1274, 1278 (8th Cir.1993).

### VI. Conclusion

Newcourt has timely sought a determination of its deficiency claim. The amount of its claim is appropriately determined in this Court, both as against the Debtor and the non-debtor spouse. An appropriate Order will be entered.

### ORDER

This 3 day of July, 2002, in accordance with the accompanying Opinion, it shall be, and hereby is, ORDERED as follows:

1. This bankruptcy case is reopened for the purposes of fixing the fair market value of the real property in Crawford County, Pennsylvania, and in accordance with the Deficiency Judgment Act, 42 Pa. Cons.Stat. Ann. § 8103.

2. A hearing to consider the fair market value of the property at issue is fixed for August 5, 2002 at 2:45 p.m. in the Bankruptcy Courtroom, 717 State Street, 7th Floor, Erie, Pennsylvania. Only 10 minutes have been reserved on the Court's calendar; no witnesses will be heard. If there is an issue of fact, an evidentiary hearing will be fixed at a later date. All parties may participate by telephone pursuant to the attached instructions.

3. This is an interlocutory order and not subject to appeal pending a final order which fixes the value of the property and the amount of the Newcourt's deficiency judgment.