

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-28-2005

# In re Zinchiak

Precedential or Non-Precedential: Precedential

Docket No. 03-4509

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"In re Zinchiak " (2005). *2005 Decisions.* Paper 1261.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1261

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 03-4509

———

IN RE KENNETH ZINCHIAK,
d/b/a ZINCHIAK MANUFACTURING CO.,

Debtor,

KENNETH A. ZINCHIAK &
KATHLEEN K. ZINCHIAK, husband and wife,

Appellants,

v.

CIT SMALL BUSINESS LENDING CORPORATION,
as successor to NEWCOURT SMALL BUSINESS LENDING
CORPORATION
f/k/a AT&T SMALL BUSINESS LENDING CORPORATION.

———

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 03-cv-38)
District Judge: Honorable David S. Cercone

———

Argued February 8, 2005

Before: BARRY, FUENTES, and BECKER, Circuit Judges.

(Filed: April 28, 2005)

P. Raymond Bartholomew (Argued)

Bartholomew & Wish
701 North Hermitage Road
Hermitage, PA 16148

ATTORNEYS FOR APPELLANTS

Dennis J. Roman (Argued)
Grogan Graffman, P.C.
Four Gateway Center, 12th Floor
Pittsburgh, PA 15222

ATTORNEYS FOR APPELLEE

———

OPINION OF THE COURT

———

FUENTES, Circuit Judge.

In this appeal, we must determine whether the Bankruptcy Court abused its discretion in reopening the bankruptcy case of appellant Kenneth A. Zinchiak ("Zinchiak" or "Debtor") to permit the appellee Newcourt Small Business Lending Corporation ("Newcourt")[1] to file a petition to fix the fair market value of certain real estate under Pennsylvania's Deficiency Judgment Act ("DJA"), 42 Pa. Const. Stat. Ann. § 8103, and, if not, whether the Bankruptcy Court properly interpreted the interplay between the DJA and the jurisdictional and automatic stay provisions of the U.S. Bankruptcy Code ("Code"). The District Court affirmed the decision of the Bankruptcy Court to reopen the case as well as its treatment of the merits of Newcourt's deficiency petition under the DJA. The Debtor-appellant Zinchiak and his wife now appeal from these decisions. For the following reasons, we will affirm.

## I. Background

---

[1]N/k/a CIT Small Business Lending Corporation.

A.    Bankruptcy Proceedings

The essential facts are not in dispute.  Zinchiak filed a voluntary Chapter 11 petition in the Bankruptcy Court for the Western District of Pennsylvania on January 29, 1999.  With the debtor's consent, the case was converted to a Chapter 7 proceeding on April 22, 1999, and a trustee was appointed.

Zinchiak owned commercial real estate located in Crawford County, Pennsylvania ("business property") as well as certain personal property used in his business operation ("personal property," and together with business property, the "business assets").  Zinchiak and his wife, Kathleen Zinchiak, also owned residential real estate in Mercer County, Pennsylvania ("residential property"). Each parcel of property was encumbered as follows. Newcourt held a first mortgage lien against the business property, as well as a first security lien on most of the personal property associated with the business operations.  PNC Mortgage Corporation ("PNC"), as successor to Marine Bank, held a first mortgage lien against the residential property.  Newcourt held a second mortgage lien on the residential property.  The Money Store, n/k/a Alegis Group, Inc., held a third mortgage lien against the residential property.

On April 8, 1999, several months after Zinchiak's initial filing for bankruptcy, Newcourt filed a motion seeking relief from the automatic stay.  See 11 U.S.C. § 362.[2]  Specifically, Newcourt sought relief from the automatic stay to pursue its interests in the business property, personal property, and the residential property. Zinchiak and the trustee subsequently filed responses to Newcourt's motion. Zinchiak argued that the value in the business

---

[2]The automatic stay serves several purposes, including providing "a debtor a breathing spell from creditors by stopping all collection efforts and all foreclosure actions," as well as protecting "creditors by preventing particular creditors from acting unilaterally to obtain payment from a debtor to the detriment of other creditors."  McCartney v. Integra Nat'l Bank N., 106 F.3d 506, 509 (3d Cir. 1997).

property was more than sufficient to satisfy Newcourt's claim on its business loan and thus there was no need to look to the residential property except in the event of a deficiency after liquidation of the business assets. Based on Zinchiak's assertions of value, the trustee requested that the automatic stay remain in effect until it was determined whether the administration of the estate might result in equity for the benefit of unsecured creditors. At a hearing on May 3, 1999 to consider the motion, Newcourt agreed to continue its motion to permit the trustee an opportunity to determine whether the Debtor's property could be marketed for a price which would render a benefit for the estate.

Thereafter, at a subsequent hearing on September 7, 1999, Newcourt presented recent appraisals of the Debtor's business property. Based on these appraisals, the trustee concluded that there was no equity for the benefit of unsecured creditors and therefore consented to the entry of an order granting Newcourt's motion for relief from the automatic stay. Nonetheless, although Zinchiak did not oppose the granting of relief from the automatic stay as to the business assets, he continued to oppose relief as to the residential property on the grounds that Newcourt could be paid in full, or nearly in full, from liquidation of the business assets. Accordingly, Zinchiak argued that there was no need to grant relief with respect to the residential property until it became evident from liquidation of the business assets that a deficiency remained on Newcourt's claim.

After the hearing, the Bankruptcy Court entered an order dated September 29, 1999 granting the Debtor's request. The order contemplated essentially a "step-by-step" approach in which Newcourt would proceed first to liquidate the business assets but wait to pursue its interests in the residential property until it became clear that a deficiency existed on its claim. Accordingly, the order lifted the automatic stay as to the business assets "so that Newcourt Financial may exercise its right to the above property under non-bankruptcy law." However, the order specifically stated

that the motion "is deferred as to the [residential property]."[3]

With the automatic stay partially lifted, Newcourt proceeded to liquidate its interests in the business assets. In particular, at a sheriff's sale of the business property in June 2000, Newcourt was the successful purchaser for a bid of costs and taxes. After Newcourt commenced efforts to market the business property, it became clear, however, that liquidation of the business property would not satisfy Newcourt's claim and thus Newcourt would have to look to the residential property for full satisfaction. In light of this new information, Zinchiak was forced to concede for the first time, at a status conference held on October 2, 2000, that no equity remained in the residential property for the benefit of himself or any unsecured creditors.

Accordingly, on November 1, 2000, the Bankruptcy Court issued a memorandum opinion addressing the outstanding motions for relief from the automatic stay filed by PNC, Newcourt, and the Money Store. After reviewing the information submitted by the parties regarding the amount of the secured creditors' claims and the value of the residential property, the Bankruptcy Court found that under no scenario would there be any equity in the residential property for the benefit of the Debtor or unsecured creditors.[4]

_____

[3]Subsequent to the Bankruptcy Court's ruling on the Newcourt motion, both PNC and the Money Store, as first and third secured mortgage holders on the residential property respectively, filed motions to lift the automatic stay so that they could proceed on their interests in the residential property. In response, Zinchiak asserted once again that there was substantial value in the residential property and that the equity therein could not be determined until Newcourt exhausted its remedies against the business assets. Consequently, the Bankruptcy Court deferred PNC and the Money Store's motions until it was determined whether Newcourt, following liquidation of the business assets, would have a deficiency that needed to be satisfied by the residential property.

[4]Throughout the bankruptcy proceeding, a wide range of values for the residential property had been alleged, with Zinchiak

Consequently, the Bankruptcy Court concluded that "[t]here appears to be no reason to further delay the [secured creditors] from proceeding against their collateral." In re Zinchiak, 280 B.R. 117, 124 (Bankr. W.D. Pa. 2002). An order was entered on January 9, 2001 lifting the automatic stay and permitting PNC, Newcourt, and the Money Store to pursue "state court remedies" against the residential property.

An order of discharge was entered on March 28, 2001, and a final decree was entered on the same date closing the bankruptcy case.

### B. Post-Bankruptcy Proceedings

On or about April 20, 2001, the Money Store filed a quiet title action in the Court of Common Pleas of Mercer County seeking to have Newcourt's mortgage against the residential property declared discharged and marked satisfied based on Newcourt's purported failure to comply with the requirements of the DJA.[5] In particular, the Money Store alleged that Newcourt

---

asserting the highest value of $350,000 while PNC submitted valuations in the $229,000-$239,000 range. The Bankruptcy Court found that the remaining outstanding balances due the various lenders with respect to the residential property were as follows:

| | |
|---|---|
| PNC: | ($111,164) |
| Newcourt: | ($165,000) |
| The Money Store: | ($89,000) |

Even if the Debtor's high-end $350,000 valuation was used, it was clear that there was negative equity in the residential property.

[5]The DJA "was passed in the 1940s to remedy a practice prevalent among judgment creditors during the Great Depression." First Fed. Sav. and Loan Ass'n of Carnegie v. Keisling, 746 A.2d 1150, 1155 (Pa. Super. Ct. 2000). The practice was that creditors would credit only the price of the property purchased at a sheriff's sale towards their judgments, rather than credit the fair market value of the property. The provisions of the DJA "protect

had failed to file a timely petition to fix the fair market value of the business property within the applicable six-month limitation period under the DJA or within 30 days of the lifting of the automatic stay. Newcourt filed preliminary objections to the Money Store's action on June 27, 2001. In addition, Newcourt filed a motion with the Bankruptcy Court to reopen the Debtor's bankruptcy proceeding, pursuant to Federal Rule of Bankruptcy Procedure 5010 and 11 U.S.C. § 350(b), in order to file the deficiency petition. Newcourt filed a similar petition to fix the market value of the business property in the Court of Common Pleas of Crawford County, although Newcourt insisted that this parallel state court filing was purely precautionary and that the Bankruptcy Court, which it contended shared concurrent jurisdiction with the state court to hear the petition, was the most suitable forum to hear the matter. In addition, Zinchiak and his non-debtor spouse filed a petition to mark Newcourt's foreclosure judgment satisfied, released, and discharged in the Court of Common Pleas of Crawford County. Thus, when the Bankruptcy Court ruled on the motion to reopen, at least three proceedings relating to Newcourt's deficiency petition were pending in state court.[6]

---

judgment debtors whose real estate is sold in execution, by requiring the [judgment creditor] to give credit for the [fair market] value of the property [the judgment creditor] purchased at his execution and not merely to credit the price at which [the property] was sold." Id. (quoting PNC Bank Nat'l Ass'n v. Balsamo, 634 A.2d 645, 654 (1993)) (alterations in original).

[6]Newcourt contests certain factual statements made in the Bankruptcy Court and District Court opinions. First, with regards to both courts' statement that Newcourt filed deficiency petitions in two state courts – the Court of Common Pleas of Mercer County and the Court of Common Pleas of Crawford County – Newcourt states that only one such motion was ever filed, in Crawford County. Second, with regards to both courts' statement that Zinchiak and his wife filed a motion to mark the foreclosure judgment satisfied, released and discharged in the Court of Common Pleas of Crawford County, Newcourt argues that the state court docket reveals that the motion was never filed, only served on opposing counsel. Because these questions of fact do not bear on

-7-

The Bankruptcy Court addressed the matters raised in Newcourt's motion to reopen in an opinion issued on July 3, 2002. See In re Zinchiak, 280 B.R. at 117. The Bankruptcy Court determined that cause existed to reopen the closed case and proceeded to adjudicate the merits of Newcourt's deficiency petition under the DJA. Thereafter, the Bankruptcy Court entered a separate consent order dated November 20, 2002, fixing the fair market value of the business property at $172,500. Having complied with the requirements of the DJA, Newcourt was now free to satisfy the deficiency on its claim from the residential property under applicable state law.

Zinchiak, his wife, and the Money Store filed an appeal to the District Court for the Western District of Pennsylvania. In a thorough and persuasive opinion, the District Court affirmed the Bankruptcy Court's decision to reopen the bankruptcy case as well as its resolution of the merits of Newcourt's deficiency petition under the DJA. Zinchiak and his wife now appeal to this Court. The Money Store did not participate in this appeal.

## II. Standard of Review and Jurisdiction

The standard of review over the Bankruptcy Court's decision is the same as that exercised by the District Court. See In re Pillowtex, Inc., 349 F.3d 711, 716 (3d Cir. 2003). Accordingly, this Court reviews "the Bankruptcy Court's findings of fact for clear error and exercises plenary review over the Bankruptcy Court's legal determinations." Id. Additionally, the decision of the Bankruptcy Court to reopen a previously closed bankruptcy proceeding is reviewed for abuse of discretion. See Donaldson v. Bernstein, 104 F.3d 547, 551 (3d Cir. 1997). We have jurisdiction over this appeal pursuant to 28 U.S.C. §§ 158(d) and 1291.

## III. Discussion

---

our ultimate disposition of this appeal, we need not resolve the factual disputes. However, for purposes of this appeal, we will rely on the facts recited by the Bankruptcy Court in its opinion.

In McCartney v. Integra National Bank North, we discussed at length the purposes and requirements of the DJA:

> Under Pennsylvania law, every judgment creditor who forces real estate to be sold in an execution sale must comply with the DJA to protect its claim to any unpaid balance remaining after the sale. 42 Pa.C.S.A. § 8103. Under the DJA, the judgment creditor has six months after the debtor's collateral is sold in which to petition the court to fix the fair market value of the real property. 42 Pa.C.S.A. § 5522(b). Failure to file a petition within this time period creates an irrebuttable presumption that the creditor was paid in full in kind. This presumption serves to discharge all parties either directly or indirectly liable to the judgment creditor for payment of the debt, including guarantors. 42 Pa.C.S.A. § 8103(d).

106 F.3d at 509 (citations omitted).[7]

---

[7]The relevant provisions of the Deficiency Judgment Act state as follows:

§ 8103. Deficiency judgments
  (a) General rule.- Whenever any real property is sold, directly or indirectly, to the judgment creditor in execution proceedings and the price for which such property has been sold is not sufficient to satisfy the amount of the judgment, interest and costs and the judgment creditor seeks to collect the balance due on said judgment, interest and costs, the judgment creditor shall petition the court to fix the fair market value of the real property sold. The petition shall be filed as a supplementary proceeding in the matter in which the judgment was entered.

  (d) Action in absence of petition.- If the judgment creditor shall fail to present a petition to fix the fair

In this matter, it is undisputed that Newcourt did not file a petition to fix the fair market value of the business property within six months of the sheriff's sale, but did so more than a full year after the sale.[8] Ordinarily, the failure to file a timely petition would serve to discharge Newcourt's claim on the debtor's estate, thereby benefitting other creditors or potentially the Debtor himself. However, this case "does not present a normal situation where the DJA can be applied by its literal terms." Id. at 509. The Bankruptcy Court, upon Newcourt's request, reopened Zinchiak's bankruptcy case and concluded that the six month limitation period of the DJA had been tolled by operation of the automatic stay that remained in place as to the residential property. The Bankruptcy Court also concluded that Mrs. Zinchiak could be named as a

> market value of the real property sold within the time after the sale of such real property provided by section 5522 (relating to six months limitation), the debtor, obligor, guarantor or any other person liable directly or indirectly to the judgment creditor for the payment of the debt, or any person interested in any real estate which would, except for the provisions of this section, be bound by the judgment, may file a petition, as a supplementary proceeding in the matter in which the judgment was entered, in the court having jurisdiction, setting forth the fact of the sale, and that no petition has been filed within the time limited by section 5522 to fix the fair market value of the property sold, whereupon the court, after notice as prescribed by general rule, and being satisfied of such facts, shall direct the clerk to mark the judgment satisfied, released and discharged.

42 Pa. Cons. Stat. Ann. § 8103(a), (d) (2002 Supp.).

[8]In this matter, the sheriff's sale as to the business property occurred on June 2, 2000, and the deed reflecting the sale was recorded on June 13, 2000. Under Pennsylvania law, the six month period in which Newcourt would ordinarily be expected to file a deficiency petition expired on or around December 13, 2000. However, Newcourt did not file its petition until June 29, 2001.

respondent in the deficiency proceeding, even though she was not a debtor in bankruptcy.

In this appeal, Zinchiak raises three principal arguments. First, he asserts that the Bankruptcy Court abused its discretion in reopening his bankruptcy case to hear Newcourt's deficiency petition under the DJA. Second, Zinchiak argues that the Bankruptcy Court erred in exercising jurisdiction over his wife, Kathleen Zinchiak, as a respondent in the deficiency proceeding. Finally, Zinchiak argues that the Bankruptcy Court erred in its conclusion that Newcourt's deficiency petition was timely filed under the DJA by misapplying the start-date for the six month limitation period under the DJA.

We address each argument in turn.[9]

**A.**

In order to reach the merits of Newcourt's deficiency petition under the DJA, the Bankruptcy Court was required to reopen Zinchiak's Chapter 7 bankruptcy case, which had been previously closed. Section 350(b) of the Code provides that "[a]

---

[9]As an initial matter, Newcourt argues that the appeal has been rendered moot because, during the pendency of this appeal, the residential property was sold at a sheriff's sale and Zinchiak, having failed to seek a stay of that sale, no longer has any legal or equitable interest in the residential property. We conclude that the appeal is not moot because Zinchiak contends, and we have not heard or been presented with convincing arguments to the contrary, that he retains certain rights against Newcourt, including possible disgorgement, were this Court to reverse the decision of the Bankruptcy Court. See In re Swedeland Dev. Group, Inc., 16 F.3d 552, 562 (3d Cir. 1994) (noting that an appeal is not moot if, upon reversal, some meaningful relief can be granted to the appellant even though the parties cannot be returned to the status quo ante). However, in holding that the appeal is not moot, we express no opinion as to whether such a disgorgement right exists as a matter of state law.

case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b); see also Fed. R. Bankr. P. 5010. We have previously noted that bankruptcy courts have broad discretion to reopen cases after an estate has been administered. See Judd v. Wolfe, 78 F.3d 110, 116 (3d Cir. 1996); In re Becker's Motor Transp., Inc., 632 F.2d 242, 245 (3d Cir. 1980) (interpreting the previous version of the Code); see also In re Castillo, 297 F.3d 940, 945 (9th Cir. 2002); In re Woods, 173 F.3d 770, 778 (10th Cir. 1999).

The record contains sufficient grounds to support the Bankruptcy Court's decision to reopen for cause. As the Bankruptcy Court noted, cause existed to reopen because Newcourt's petition under the DJA implicated issues regarding the "effect of the automatic stay during the duration of the bankruptcy case and an interpretation of [the] court's orders granting [step-by-step] relief from [the automatic] stay." In re Zinchiak, 280 B.R. at 125. As part of this step-by-step approach, the initial order partially lifted the automatic stay only as to the business property, and not as to the residential property. However, Zinchiak argued then, and does so now, that once the automatic stay was lifted as to the business property, Newcourt should have immediately filed a petition to fix the fair market value of the business property following its sale in order to proceed against the residential property, even though the automatic stay remained in effect as to the residential property. The issue of whether the filing of a deficiency petition following sale of the business property was encompassed within, and thus barred by, the automatic stay was an issue properly to be decided by the Bankruptcy Court after reopening. As the Bankruptcy Court noted, it was well suited to "provide the best interpretation of its own order" granting partial relief from the automatic stay. Id. (citations omitted).

Moreover, the Bankruptcy Court found that Newcourt's petition had the potential to generate assets for the benefit of unsecured creditors of the Debtor's estate. This is notable considering that previously the Bankruptcy Court had concluded that there remained no equity in the residential property for the benefit of the Debtor or unsecured creditors. However, in the event

-12-

that it was found that Newcourt had failed to comply with the requirements of the DJA, and its claim declared discharged and marked satisfied, additional equity in the residential property could emerge for the benefit of unsecured creditors. It is well-recognized that a bankruptcy proceeding may be reopened to administer estate assets and to determine whether additional assets may be available for creditors of the estate. See, e.g., In re Phoenix Petroleum Co., 278 B.R. 385, 402 (Bankr. E.D. Pa. 2001); see also Miller v. Shallowford Cmty. Hosp., Inc., 767 F.2d 1556, 1559 n.4 (11th Cir. 1985).[10]

In light of the clear evidence in the record supporting the Bankruptcy Court's exercise of its discretion, Zinchiak's arguments

---

[10]We are unpersuaded by Zinchiak's argument that the Bankruptcy Court erred in its conclusion that Newcourt's petition had the potential to generate assets for the benefit of unsecured creditors. See Appellant's Br. at 12 (citing Napotnik v. Equibank, 679 F.2d 316 (3d Cir. 1982); In re Hunter, 970 F.2d 299 (7th Cir. 1992); In re Maloney, 146 B.R. 168 (Bankr. W.D. Pa. 1992); and In re Houck, 184 B.R. 21 (Bankr. E.D. Pa. 1995)). It is Zinchiak's position that any remaining equity that emerged following the disposition of Newcourt's petition would accrue to the joint benefit of Zinchiak and his non-debtor wife, and be exempt from the bankruptcy estate, by virtue of Pennsylvania law governing property held in tenancy by the entireties.

However, Zinchiak's argument rests on a misunderstanding of the issue before the Bankruptcy Court. The dispute was not whether any residual equity in the residential property that emerged would accrue, as a matter of law, to either creditors of the estate or to Zinchiak and his wife. Such an issue would only become relevant if additional equity in fact did emerge in the residential property, well after reopening had been granted. Rather, the issue was whether cause existed to reopen, and the Bankruptcy Court was well within its discretion to conclude that the possibility that the disposition of Newcourt's petition could generate additional assets for the benefit of unsecured creditors of the estate supported reopening the bankruptcy proceeding.

-13-

to the contrary are misplaced.  Zinchiak renews his contention, already rejected by the District Court, that the lifting of the automatic stay as to both the business and residential property relinquished the Bankruptcy Court's authority over all property in the Debtor's estate, and what remained essentially was an inter-creditor dispute between Newcourt and the Money Store (i.e., between the second and third priority mortgagees on the residential property), a matter which would have no impact on the bankruptcy estate.  However, as the District Court noted, this argument is off the mark because Newcourt did not petition the Bankruptcy Court to resolve an inter-creditor dispute with the Money Store.  Nor was Newcourt's right to pursue a deficiency petition dependent upon the property released by the orders granting partial relief from the automatic stay.  Rather, Newcourt's right to pursue a deficiency petition arose from its ownership of business loans extended to the Debtor, and its right to collect on those loans was an issue controlled exclusively by the Bankruptcy Court and the relief it permitted.  Indeed, Newcourt's ability to proceed against the residential property was entirely contingent upon a judicial determination that liquidation of the business property had not satisfied its secured interest.  And, it was the Bankruptcy Court that retained control over Newcourt's ability to proceed against the residential property, long after it had lifted the automatic stay as to the business property.  Accordingly, the cases cited by Zinchiak for the proposition that a bankruptcy court lacks jurisdiction to resolve disputes having no impact on the bankruptcy estate are inapposite.

We also reject Zinchiak's argument that the Bankruptcy Court should have abstained from reopening the proceeding when several related deficiency actions were pending in Pennsylvania state courts.  In exercising its discretion to reopen, a bankruptcy court should consider whether similar proceedings are already pending in state court as well as make a determination as to which forum – state court or bankruptcy court – is most appropriate to adjudicate the issues raised by a motion to reopen.  See In re John G. Berg Assocs., Inc., 138 B.R. 782, 786 (Bankr. E.D. Pa. 1992).  Contrary to Zinchiak's claim, the Bankruptcy Court did in fact make an explicit determination that it was the appropriate forum to resolve the merits of Newcourt's deficiency petition.  See In re Zinchiak, 280 B.R. at 127 ("We see no reason to relinquish this

matter to the state court for resolution. Resolution of Newcourt's deficiency judgment claim will have an undeniable affect on the value of the assets, which might be available for the benefit of its creditors. The determination is therefore relevant to case administration.") (internal citation omitted). We see no error in this determination in light of the evidence in the record that Newcourt's deficiency petition presented issues related to the Bankruptcy Court's "step-by-step" lifting of the automatic stay, as well as the possibility that additional assets could be generated for the benefit of unsecured creditors of the Debtor's estate.[11]

**B.**

Zinchiak contends that the Bankruptcy Court erred when it concluded that Zinchiak's wife, Mrs. Zinchiak, was subject to the court's "related to" jurisdiction and thus could be made a party to Newcourt's deficiency petition. We disagree.

In In re Combustion Engineering, we explained that federal bankruptcy jurisdiction is defined by 28 U.S.C. § 1334, which confers upon the "district courts 'original and exclusive jurisdiction of all cases under title 11,' and 'original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.'" 391 F.3d 190, 225 (3d Cir. 2004) (quoting § 1334(b)). "Section 157(a) of the Bankruptcy Code permits district courts to refer most matters to a bankruptcy court." Id. (citing 28 U.S.C. §§ 157(a), 151). Thus, "[b]ankruptcy court jurisdiction potentially extends to four types of title 11 matters: (1) cases under title 11, (2) proceeding[s] arising under

_____

[11]Our conclusion in this regard is informed by the Court's prior decision in McCartney in which we analyzed the effects of the automatic stay on a deficiency petition under the DJA in slightly different circumstances. In particular, in rejecting the argument that the automatic stay did not extend to deficiency petitions under the DJA, we noted that "debtors should not be burdened by state court litigation when deficiency judgment actions impacting upon the debtor's estate can be settled in the bankruptcy forum." 106 F.3d at 512.

title 11, (3) proceedings arising in a case under title 11, and (4) proceedings related to a case under title 11." Id. (internal quotations omitted). We focus our attention on the fourth type of proceeding.

The test of whether a bankruptcy court has "related to" jurisdiction over a matter is whether "the outcome of [the] proceeding could conceivably have any effect on the estate being administered in bankruptcy." In re Resorts Int'l, Inc., 372 F.3d 154, 164 (3d Cir. 2004) (quoting Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984), overruled on other grounds, Things Remembered, Inc. v. Petrarca, 516 U.S. 124 (1995)). The key word in the test is "conceivable" and "certainty, or even likelihood, is not a requirement." Id. (quoting In re Marcus Hook Dev. Park, Inc., 943 F.2d 261, 264 (3d Cir. 1991)). The "conceivable effects" test is broad and extends to any related lawsuit or proceeding, including third-party proceedings, that "would affect the bankruptcy proceeding without the intervention of . . . another lawsuit." In re Federal-Mogul Global, Inc., 300 F.3d 368, 382 (3d Cir. 2002). Thus, "related to" jurisdiction has been exercised where third-party actions involve assets that are under the bankruptcy court's administration, see In re Wood, 825 F.2d 90, 93-94 (5th Cir. 1987), as well as third-party actions where the outcome could have a direct effect on the assets of the estate, see Kaonohi Ohana, Ltd. v. Sutherland, 873 F.2d 1302, 1306-07 (9th Cir. 1989).[12]

---

[12]Zinchiak's contends that the Bankruptcy Court erroneously relied on Abramowitz v. Palmer, 999 F.2d 1274 (8th Cir. 1993) (holding that "related to" jurisdiction existed to impose a constructive trust on a non-debtor's spouse's interest in property held in the entireties where the evidence indicated that the debtor spouse and the non-debtor spouse acted fraudulently), to support "related to" jurisdiction because there is no evidence of fraud in this case. However, regardless of whether Zinchiak's narrow reading of Abramowitz is correct, we need not confine our analysis of "related to" jurisdiction merely to the Eighth Circuit's decision. Instead, like the District Court, we think the exercise of "related to" jurisdiction over the DJA proceeding in this matter is amply

-16-

Clearly, the deficiency proceeding involving Mrs. Zinchiak was a matter that could have a conceivable effect on the handling and disposition of the assets of the Debtor's estate.[13]  Similar to how a finding that Newcourt failed to comply with the DJA could affect the bankruptcy estate, the amount determined to be the fair market value as a result of the DJA petition could have an effect on the estate with respect to the amount available to Newcourt, other creditors, and the Debtor.  Zinchiak appears to argue that it was error for the Bankruptcy Court to assert "related to" jurisdiction over Kathleen Zinchiak herself, making repeated references to the Bankruptcy Court's action of making her a respondent in the case.  However, "related to" jurisdiction is a species of federal court subject matter jurisdiction (not personal jurisdiction); it governs the question whether a federal court may hear a proceeding.  Accordingly, we find no error in the Bankruptcy Court's exercise of "related to" jurisdiction over the deficiency petition, which involved Mrs. Zinchiak.[14]  Having determined that the DJA

---

supported by the case law.

[13]We note in passing that Mrs. Zinchiak's possible role in the deficiency proceeding arose by virtue of the DJA.  As a co-mortgagor on the residential property, Mrs. Zinchiak was likely vested with certain rights under the DJA, including the right to notice and an opportunity to be heard at any deficiency proceeding, because she granted to Newcourt a mortgage that would permit it to collect from the residence any deficiency on the business loan remaining after liquidation of the business property.  See 42 Pa. Cons. Stat. Ann § 8103(b).  Failure to name Mrs. Zinchiak as a party "indirectly liable" to Newcourt might have discharged her from all personal liability to the creditor on the debt.  See 42 Pa. Cons. Stat. Ann. § 8103(d).  Thus, Mrs. Zinchiak was a proper party to the disposition of Newcourt's deficiency claim.

[14]Zinchiak seems to suggest that Newcourt could have pursued any deficiency petition against Mrs. Zinchiak separately in state court, and thus an exercise of "related to" jurisdiction was not necessary.  See Appellant's Br. at 14-15 (citing In re Wilkins, 150 B.R. 127 (Bankr. M.D. Pa. 1992); United States v. Dos Cabezas Corp., 995 F.2d 1486 (9th Cir. 1993); and In re Russell Corp., 156

-17-

proceeding properly falls within the congressional grant of "related to" jurisdiction, we must reject Zinchiak's assertions with respect to his wife's inclusion in the proceeding as irrelevant. Although perhaps those assertions could form the basis of some other argument unrelated to subject matter jurisdiction, Zinchiak makes no such arguments.

## C.

Zinchiak argues that the Bankruptcy Court erroneously calculated the start date for the six-month limitation period under the DJA in which a creditor is required to petition a court to fix the fair market value of the collateral sold. See 42 Pa. Cons. Stat. Ann. § 5522(b); see also McCartney, 106 F.3d at 509 (noting that failure to timely file a petition "creates an irrebuttable presumption that the creditor was paid in full" and "serves to discharge all parties either directly or indirectly liable to the judgment creditor for payment of the debt") (citing 42 Pa. Cons. Stat. Ann. § 8103(d)). As we noted previously, Newcourt did not file a petition to fix the fair market value of the business property within six months of the sheriff's sale, but did so more than a year later. Thus, unless there was a basis to toll the limitation period under the DJA, Newcourt's petition would be untimely, and the claim on the Debtor's estate would be deemed to be paid in full.

In this matter, Pennsylvania law provides the basis to toll the limitation period under the DJA. 42 Pa. Cons. Stat. Ann. § 5535(b) states:

> Where the commencement of a civil action or proceeding has been stayed by a court or by statutory

B.R. 347 (Bankr. N.D. Ga. 1993)). However, the test in this matter is not whether Newcourt could have filed separate and distinct deficiency claims against Mr. and Mrs. Zinchiak in state and federal court. Rather, for the Bankruptcy Court to exercise "related to" jurisdiction over the DJA proceeding, only the "conceivable effects" test needs to be satisfied, and it is clear from the record that it is satisfied here.

prohibition, the duration of the stay is not a part of the time within which the action or proceeding must be commenced.

The Bankruptcy Court concluded that the automatic stay is precisely the type of "statutory prohibition" referenced in § 5535(b). See In re Zinchiak, 280 B.R. at 127. We agree. Accordingly, the six-month limitation period under the DJA was tolled by § 5535(b) while the automatic stay remained in place.[15]

Zinchiak contends, however, that once the automatic stay was partially lifted to permit Newcourt to pursue state law remedies against the business property, the remaining stay as to the residential property did not bar Newcourt from filing a deficiency petition seeking a fair market valuation of the business property. In other words, the dispositive issue is whether the order of the Bankruptcy Court lifting the automatic stay with respect to the business property also lifted the automatic stay with respect to the filing of a petition to fix the fair market value of the business property, as required by the DJA.

In this case, we conclude that the partial relief from the automatic stay as to the business property did not necessarily imply a duty on the part of Newcourt to file a deficiency petition thereafter with respect to that property. This is so because it was

---

[15]The District Court appeared to suggest that 11 U.S.C. § 108(c) provides a separate and independent federal basis for tolling the six month limitation period of the DJA. (App. at 15-16). See also Interbusiness Bank, N.A. v. First Nat'l Bank of Mifflintown, 328 F. Supp. 2d 522, 526-27 (M.D. Pa. 2004) (finding that DJA limitation period was tolled by virtue of 11 U.S.C. § 108(c)); In re Wilkens, 150 B.R. 127, 128-29 (Bankr. M.D. Pa. 1992) (same). In McCartney, we expressly reserved the question of whether § 108(c) "operated to suspend the limitation period for initiating a deficiency judgment action in state court pursuant to the DJA." 106 F.3d at 513. In light of the state law basis for tolling the limitation period in this matter, on which the Bankruptcy Court relied, we see no need to decide the issue.

clear to the Bankruptcy Court and all parties involved that the only asset that remained for satisfaction of any potential deficiency claim brought by Newcourt would be the residential property. And it was clear in the Bankruptcy Court's step-by-step approach that Newcourt could not proceed on a deficiency claim against the residential property without first gaining additional relief from the automatic stay from the Bankruptcy Court. See In re Zinchiak, 280 B.R. at 127 ("Prior to the granting of relief from stay to allow Newcourt (and the other lenders) to pursue the Residence, any action to pursue a deficiency judgment would have been viewed as an action to enforce Newcourt's claim against the Residence, an action that, despite repeated requests from Newcourt, had been forbidden by this Court until January 9, 2001."). As the District Court noted, the order lifting the automatic stay as to the business property "did not permit Newcourt to pursue all rights on the underlying debt, but instead granted Newcourt only limited relief to 'exercise its rights to the [business] property under non-bankruptcy law.'" (App. at 213) (alteration in original). The order in question deferred any matters relating to the residential property and did not permit Newcourt to submit the Debtor to further litigation emanating from the underlying debt secured by the business property. Cf. McCartney, 106 F.3d at 511.

Zinchiak contends that the Bankruptcy Court's decision on this issue places it in conflict with the recent decision in Interbusiness Bank, N.A. v. First Nat'l Bank of Mifflintown, 328 F. Supp. 2d 522 (M.D. Pa. 2004), issued after the appeal was filed in this matter. In holding that the plaintiff-creditor had failed to timely file a petition to fix the fair market value under the DJA following the foreclosure of certain real property, the Interbusiness Bank court rejected the argument that "the six month limitations period of the [DJA] was [] tolled during the pendency of the bankruptcy action." 328 F. Supp. 2d at 529. However, we find no conflict between the Bankruptcy Court's decision in this matter and Interbusiness Bank. Unlike the present case, in Interbusiness Bank, there was no indication that the bankruptcy court was using a narrow step-by-step approach to grant relief from the automatic stay, that there was consensus among the parties as to which asset of the Debtor the creditor would turn to in the event of a deficiency, or that there was otherwise agreement that the creditor

could not proceed on a deficiency claim against the residential property without first gaining additional relief from the automatic stay from the bankruptcy court. Rather, in Interbusiness Bank, the bankruptcy court granted broad relief from the stay, permitting the plaintiff-creditor to "exercise its rights and remedies under state law" against the debtor's real property in which it had a secured interest. Thus, given the narrow and piecemeal lifting of the automatic stay as well as the expectations of the Bankruptcy Court and the parties involved in this matter, we find Interbusiness Bank to be distinguishable.[16]

As a final consideration, we note that Appellants were not harmed by Newcourt's purported failure to file a deficiency petition at an earlier date or otherwise proceed on its petition in state court. Indeed, Zinchiak received the same opportunity to be heard on all matters relevant to the fixing of the fair market value of the business property that he otherwise would have "been granted in a state court deficiency judgment action commenced under the DJA." McCartney, 106 F.3d at 512. Zinchiak's argument appears to be nothing more than an effort to escape full liability for Newcourt's deficiency claim, but, as we have cautioned before, a court is not to "transmogrify the DJA into a means for guarantors to escape liability from their guarantees." Id.

## IV. Conclusion

We have considered all of the other arguments advanced by the Appellants and conclude that they are without merit. For the foregoing reasons, we will affirm.

———

[16]The other cases relied on by Zinchiak – In re Tarbuck, 304 B.R. 712 (Bankr. W.D. Pa. 2004); In re Abston, III, 115 B.R. 508 (Bankr. W.D. Pa. 1990) – may also be similarly distinguished. Of course, we are not bound by these cases in any event.