**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1134
_____

In re:  LANDSOURCE COMMUNITIES DEVELOPMENT LLC,
a/k/a Lennar/LNR Funding,
a/k/a LENR Properties LLC,
a/k/a NWHL Investment, LLC, et al.,

Debtors

v.

CITIZENS AGAINST CORPORATE CRIME, LLC,

Appellant
_____

On Appeal from the United States District Court for the
District of Delaware
(District Court No.:  1:18-cv-01793)
District Judge: Colm F. Connolly

_____

Submitted under Third Circuit L.A.R. 34.1(a)
September 25, 2020

(Opinion Filed:  December 3, 2020)

Before:  McKEE, JORDAN and RENDELL, *Circuit Judges*.
_____

O P I N I O N[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

**RENDELL**, *Circuit Judge*.

Citizens Against Corporate Crime LLC ("CACC") and its sole member and officer Nicholas Marsch III, appeal the District Court's order affirming the decision of the Bankruptcy Court to reopen the Chapter 11 case of Debtor LandSource Communities Development LLC and to enforce its order confirming the final reorganization plan. By its order, the Bankruptcy Court enjoined CACC and Marsch—who was a participant in the Chapter 11 proceedings—from litigating claims against another Chapter 11 participant, Lennar Corporation. The claims against Lennar, the Bankruptcy Court concluded, were barred by the confirmation order. The District Court agreed with the Bankruptcy Court, as do we and, therefore, we will affirm.

I.

As we write for the parties, and they are well-acquainted with the circumstances of this case from their litigation here and in jurisdictions across the country,[1] we set forth the following background only as necessary to resolve this appeal.

In 2008, LandSource, a real estate development company, petitioned for Chapter 11 bankruptcy relief. At that time, Appellee Lennar was LandSource's largest unsecured creditor. The Creditor's Committee, of which Marsch and his other company—Briarwood Capital—were members, sought the release of Lennar's claims to permit and

---

[1] See, e.g., In re Nicholas Marsch, No. 10-02939-PB11, 2010 WL 5114726 (Bankr. S.D. Cal. Dec. 2, 2010); In re Briarwood Capital, LLC, No. 10-02677-PB11, 2010 WL 2884944 (Bankr. S.D. Cal. July 20, 2010); Briarwood Capital, LLC. v. Lennar Homes of Cal., Inc., Nos. D054803, D056061, 2010 WL 4873505 (Cal. Ct. App. Dec. 1, 2010); Briarwood Capital, LLC v. Lennar Corp., 160 So. 3d 544 (Fla. Dist. Ct. App. 2015).

maximize any distributions available for smaller unsecured creditors. Without such release, the lion's share of distributions from the bankruptcy estate would likely have flowed to Lennar. Thus, the Creditor's Committee negotiated a deal with Lennar.

Under the deal, Lennar agreed to contribute nearly $140 million to the estate and to release its unsecured claims. In exchange, Lennar received, among other things, a broad release and waiver of "<u>any and all Claims</u> . . . or liabilities <u>whatsoever</u>" held by "<u>any Person</u>, in any way <u>relating to the Debtors, the Chapter 11 Cases, or the Plan</u>." JA 11 (citing JA 1154) (emphasis added). Later, the Bankruptcy Court adopted the terms of this deal into its order confirming the final Chapter 11 plan. Neither Marsch nor his company, Briarwood, appealed from the final confirmation order.

Over seven-and-a-half years later, Marsch, as sole owner and officer, formed Appellant CACC under Wyoming law and filed a whistleblower action against Lennar in California court. CACC alleged that Lennar, by its conduct leading up to and through the LandSource Chapter 11 bankruptcy, defrauded the California Public Employees' Retirement System ("CalPERS"), which had been a major investor in LandSource. The California Office of the Attorney General reviewed CACC's allegations and complaint, but ultimately declined to intervene.

In response to the California whistleblower case, Lennar moved the Bankruptcy Court to reopen the LandSource Chapter 11 case and to enforce its final plan confirmation order by enjoining CACC and Marsch from proceeding with the suit. After a hearing, the Bankruptcy Court granted both Lennar's motion to reopen and its motion to enforce, concluding that:

3

(1)     it is undisputed that Marsch was the "sole and controlling member" of CACC and that Marsch "formed CACC as a way of trying to get around and avoid the release and injunction provision provided in the confirmed Chapter 11 plan of LandSource which was not appealed and [h]as long, long since become final;

(2)     there is "no question" that "Mr. Marsch is in privity with CACC [and] Briarwood and is bound by the injunction and release;" and

(3)     "the people of California do not oppose the relief that Lennar has requested" and the "actual relief sought by Lennar is limited to Mr. Marsch and CACC."[2]

JA 17–18 (citing JA 2329). CACC appealed and the District Court affirmed in a thorough, well-reasoned thirty-three-page opinion. This timely appeal followed.

II.

The District Court had jurisdiction under 28 U.S.C. § 158(a)(1). We have jurisdiction under 28 U.S.C. § 158(d).

"We exercise plenary review of an order from a district court sitting as an appellate court in review of a bankruptcy court." In re Exide Techs., 607 F.3d 957, 961–62 (3d Cir. 2010) (citing In re CellNet Data Sys., Inc., 327 F.3d 242, 244 (3d Cir. 2003)). In so doing, we review legal determinations by a bankruptcy court de novo and review factual findings for clear error. Id. (citing In re Gen. DataComm Indus., Inc., 407 F.3d 616, 619 (3d Cir. 2005)). However, a bankruptcy court's decision on a motion to reopen bankruptcy proceedings, like decisions interpreting its own confirmation orders, is

---

[2] JA 2219 (filing from the California Attorney General expressing his "non-opposition to Lennar Corporation's Motion to Enforce the Injunction and Release in Debtor's Joint Chapter 11 Plan and Confirmation Order[.]").

4

afforded greater deference and reviewed for abuse of discretion. In re Shenango Group Inc., 501 F.3d 338, 346 (3d Cir. 2007) ("[A] bankruptcy court's interpretation of its own order ought to be subject to review for an abuse of discretion."); In re Zinchiak, 406 F.3d 214, 224 (3d Cir. 2005) ("[T]he decision of the Bankruptcy Court to reopen a previously closed bankruptcy proceeding is reviewed for abuse of discretion.").

III.

CACC's and Marsch's appeal rests on the contention that by reopening the bankruptcy case and enforcing the terms of the confirmation order against them, the Bankruptcy Court effectively and unfairly "enjoined non-parties never before the court, including millions of Californians, the California Department of Justice Office of the Attorney General, and even lawyers, from ever seeking relief under the False Claims Act laws of California and its *qui tam* remedy." Appellant's Br. 18, ECF No. 20. As we explain below, we, like the District Court, disagree with this central premise. After explaining why this premise is fundamentally flawed, we reject each of CACC's and Marsch's three other alleged errors that they contend warrant reversal.

While CACC and Marsch characterize the Bankruptcy Court's and District Court's rulings as affecting "non-parties never before the [Bankruptcy] [C]ourt," the undisputed facts show that the only parties affected are CACC and Marsch—who himself appeared before the Bankruptcy Court in connection with the LandSource Chapter 11 case over a decade ago. Indeed, Marsch did not merely appear before the Bankruptcy Court as the head of Briarwood, one of the unsecured creditors, but he played a central role in the final reorganization plan as a member of the Creditors' Committee. It was the

5

Creditors' Committee, after all, who negotiated the terms of the general release and waiver, which Marsch now seeks to circumvent.

That the Bankruptcy Court and District Court's rulings affect only Marsch and CACC is also evident from the plain terms of the Bankruptcy Court's order, which granted injunctive relief expressly "limited to Mr. Marsch and CACC." JA 30. The Bankruptcy Court enjoined only Marsch and CACC from pursuing claims against Lennar—no one else. In fact, the Bankruptcy Court eliminated any risk that its order might be misconstrued as affecting the rights of parties beyond Marsch and CACC in recognizing that "the people of California," for whom Marsch and CACC purport to speak, in fact, "do not oppose" enjoining Marsch's and CACC's whistleblower claims. JA 2223 (emphasis added); see also JA 42–43 (limiting applicability of its order to CACC and Marsch). In view of the undisputed record and the care of the Bankruptcy Court in crafting its order, we are unpersuaded that this matter affects any party beyond CACC and Marsch.

Having concluded that the essential premise of CACC's and Marsch's argument is meritless, we easily dispense with their other arguments advanced in favor of reversal. Contrary to their contentions, we hold that the District Court did not err in concluding: (1) that the Bankruptcy Court acted within its discretion in reopening the case; (2) that the Bankruptcy Court acted within its discretion in denying their motion for permissive abstention; and (3) that CACC and its sole owner and officer, Marsch, were bound by the terms of the plan confirmation order.

First, the Bankruptcy Court acted well within its discretion in reopening the LandSource Chapter 11 case. We regularly recognize the wide latitude of the bankruptcy courts to "reopen a closed case 'to administer assets, to accord relief to the debtor or for other cause.'" In re Lazy Days' RV Center, Inc., 724 F.3d 418, 422 (3d Cir. 2013) (quoting 11 U.S.C. § 350(b)). Such latitude is appropriate because it is the bankruptcy court that can "provide the best interpretation of its own order[.]" Id. at 423 (quoting In re Zinchiak, 406 F.3d at 224) (internal quotation marks omitted). Bankruptcy courts often reopen cases "to resolve [] dispute[s] regarding Settlement Agreement[s] it had previously confirmed . . . ." Id. This is precisely what the Bankruptcy Court did here and we agree with the District Court that the decision to reopen was fully within the Bankruptcy Court's discretion because it was "for the limited purpose of interpreting and enforcing [its own] Confirmation Order." JA 24.

Second, we have no jurisdiction to review the District Court's and Bankruptcy Court's decisions not to invoke permissive abstention under 28 U.S.C. § 1334(c)(1). Section 1334(c)(1) provides that a district court may "in the interest of justice . . . abstain[] from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1). "Any decision to abstain or not to abstain made under subsection (c) . . . is not reviewable by appeal or otherwise by the court of appeals . . . ." 28 U.S.C. § 1334(d) (emphasis added). We have explained that "appeals of orders denying permissive abstention unquestionably are not allowed." In re Seven Fields Dev. Corp., 505 F.3d 237, 252 (3d Cir. 2007). Thus, we have no jurisdiction to review the denial of CACC's and Marsch's underlying motion for

7

permissive abstention. If we had jurisdiction, however, we would agree with the District Court's well-reasoned conclusion that the Bankruptcy Court did not abuse its discretion in refusing to abstain.

Third, we agree with the District Court's factual conclusion that CACC and Marsch, as CACC's sole owner and officer in privity with Briarwood, are bound by the terms of the Bankruptcy Court's confirmation order including the broad, unambiguous provisions by which Marsch and Briarwood released and waived all claims against Lennar. As the District Court explained, the terms of the confirmation order and the release and waiver provisions contained in it plainly bar Marsch's and CACC's claims because their claims clearly "relate to" the Chapter 11 bankruptcy case. We discern no error in either the judgment of the District Court or the Bankruptcy Court.

IV.

For these reasons, we will affirm the District Court's order.