**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1295
_____

IN RE: CONGOLEUM CORPORATION, ET AL.,
Debtor


BATH IRON WORKS CORPORATION,
Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 2-22-cv-00423)
District Judge: Honorable Madeline C. Arleo
_____

Argued: November 15, 2023

Before: CHAGARES, *Chief Judge*, MATEY and FUENTES, *Circuit Judges*.

(Filed: August 1, 2024)


Michael A. Doornweerd
Catherine L. Steege
Jenner & Block
353 N Clark Street
Suite 4500
Chicago, IL 60654

Ian H. Gershengorn **[ARGUED]**
Illyana A. Green
Matthew Hellman
Haley B. Tuchman
Jenner & Block
1099 New York Avenue NW

Suite 900
Washington, DC 20001

Lawrence Bluestone
Angelo J. Genova
Genova Burns
494 Broad Street
Newark, NJ 07102

Daniel M. Stolz
Genova Burns
110 Allen Road
Suite 304
Basking Ridge, NJ 07920

   *Counsel for Appellant Bath Iron Works Corporation*


Amanda L. Rauer
David E. Romine
Larry D. Silver
Langsam Stevens Silver & Hollaender
1818 Market Street
Suite 2430
Philadelphia, PA 19103

Russell C. Silberglied
Richards Layton & Finger
One Rodney Square
920 N King Street
Wilmington, DE 19801

Erin E. Murphy **[ARGUED]**
Nicholas M. Gallagher
Clement & Murphy
706 Duke Street
Alexandria, VA 22314
   *Counsel for Appellee Occidental Chemical Corporation*

2

---

OPINION[*]

---

MATEY, *Circuit Judge*.

We review the decision of a federal bankruptcy judge to reopen a case closed more than ten years earlier to resolve a dispute between non-debtors already pending in a separate suit before a federal district court. Because the reopening impacted neither the administration of the bankruptcy estate nor the interests of the reorganized debtor, reopening the case was improper, and we will affirm the District Court's order.

**I.**

In 2003, Congoleum Corporation—a flooring manufacturer—filed for Chapter 11 bankruptcy protection in the District of New Jersey to resolve a series of asbestos-related lawsuits. Congoleum then negotiated a settlement with several insurers, including Century Indemnity. The agreement—what the parties call the "Century Settlement"—provided for a sale of excess insurance policies back to Century, free and clear of all claims under the policies. Appellant Bath Iron Works Corporation ("BIW") seems to hold some of those released claims. In 2006, the bankruptcy court conditionally approved the Settlement with the finding that BIW had "no responsibility for any of the liabilities of the Congoleum Flooring Business." App. 6.

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

3

In 2010, the district court ratified Congoleum's Settlement with Century as part of its approval of the final Confirmation Order (the "2010 Confirmation Order"). Paragraph 104 of the 2010 Confirmation Order stated that "[i]n support of the Century Settlement and the Century Approval Order, the Court finds that the following Century Additional Named Insureds have no responsibility for any of the liabilities of the Congoleum Flooring Business: . . . Bath Iron Works Corp." App. 200. The bankruptcy proceeding was closed in March 2011.

In 2018, Occidental Chemical Corporation sued BIW in the District of New Jersey for remediation costs on properties previously owned by Congoleum.[1] BIW responded that Occidental's claims were barred by Paragraph 104 of the 2010 Confirmation Order. In 2020, while Occidental's suit against BIW was still pending, Congoleum again filed for bankruptcy. BIW filed an adversary complaint in the new Congoleum bankruptcy seeking a declaratory judgment on the meaning of Paragraph 104 of the 2010 Confirmation Order. BIW asked the bankruptcy court "to clarify that . . . Paragraph 104—which states that BIW has 'no responsibility for any of the liabilities of the Congoleum Flooring Business'—means that BIW is not a successor to the Congoleum Flooring Business and is not responsible for any liabilities of the Congoleum Flooring Business, including any environmental liabilities." App. 18. The bankruptcy court granted summary judgment for BIW, holding that Paragraph 104 of the 2010

---

[1] BIW was once a corporate affiliate of Congoleum.

4

Confirmation Order "memorializes that BIW has no liability for any claims—asbestos and non-asbestos—stemming from the Congoleum Flooring Business." App. 19.

In the meantime, Occidental's suit against BIW progressed, and Occidental moved for summary judgment. In response to Occidental's motion, BIW returned to the Bankruptcy Court, asking to reopen Congoleum's first bankruptcy proceeding and declare that the 2010 Confirmation Order barred Occidental's claims against BIW pending in the district court. The Bankruptcy Court granted BIW's motion, finding the Bankruptcy Court was in a better position than the district court already handling Occidental's suit to interpret and apply the 2010 Confirmation Order. The Bankruptcy Court then concluded that, under the 2010 Confirmation Order, BIW had no liability for any of the claims surrounding Congoleum's facilities, a conclusion barring Occidental's claims in its separate suit.

On appeal, the District Court reversed that decision, reasoning the Bankruptcy Court lacked good cause to reopen.[2] BIW now appeals.[3]

---

[2] The District Court also addressed the merits, concluding the Bankruptcy Court erred in granting declaratory relief. Because we conclude 11 U.S.C. § 350(b) does not permit reopening in this context, we express no view on the merits of the dispute.

[3] The Bankruptcy Court had jurisdiction over the motion to reopen under 28 U.S.C. § 157(b)(2), *see In re Essar Steel Minn., LLC*, 47 F.4th 193, 199 (3d Cir. 2022), and the District Court had jurisdiction over Occidental's appeal under 28 U.S.C. § 158(a)(1). We have jurisdiction over BIW's appeal under 28 U.S.C. § 158(d)(1) and 28 U.S.C. § 1291. Like the District Court, we review the Bankruptcy Court's legal determinations *de novo* and the decision to reopen for an abuse of discretion. *In re Lazy Days' RV Ctr. Inc.*, 724 F.3d 418, 421 (3d Cir. 2013). Of course, "[a] bankruptcy court abuses its discretion when its ruling is founded on an error of law." *In re O'Brien Env't Energy, Inc.*, 188 F.3d 116, 122 (3d Cir. 1999). That is because the decision to reopen "must be tethered to the parameters of § 350(b), or it is an abuse of discretion." *In re Alpex Comput. Corp.*, 71 F.3d 353, 356 (10th Cir. 1995).

## II.

Congress made finality a centerpiece of the bankruptcy system but acknowledged a limited need to reopen a closed proceeding "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). The Bankruptcy Court relied on the broad "for other cause" language, but BIW, the party seeking to reopen, has not carried its burden to show cause exists. *In re One2One Commc'ns, LLC*, 627 B.R. 273, 283 (Bankr. D.N.J. 2021).

### A.

BIW grounds its arguments in caselaw, but neither decision BIW cites licenses reopening here.[4] BIW first points to *In re Zinchiak*, 406 F.3d 214 (3d Cir. 2005), a dispute between creditors involving the "effect of the automatic stay during the duration of the bankruptcy case and an interpretation of the [bankruptcy] court's orders granting [] relief from the automatic stay." *Id.* at 223 (cleaned up). This Court held that cause existed to reopen because resolution of the legal issue "had the potential to generate assets for the benefit of unsecured creditors of the Debtor's estate." *Id.* at 224. A "notable" development because the bankruptcy court had previously "concluded that there remained no equity in the [relevant assets] for the benefit of the Debtor or unsecured

---

[4] At argument, BIW also relied on a handful of cases addressing the jurisdiction of a bankruptcy court post-confirmation and closing to broaden the scope of "cause" under § 350(b). *See, e.g.*, Oral Arg. at 04:25–05:00 (invoking *Travelers Indem. Co. v. Bailey*, 557 U.S. 137 (2009)); Oral Arg. at 06:50–08:00 (invoking *In re Essar Steel*). But as BIW acknowledged, these cases did not address the scope of § 350(b)'s reopening power. *See* Oral Arg. at 32:10–32:20. And whether a bankruptcy court has jurisdiction is a different question than whether there is also cause to reopen a bankruptcy proceeding under § 350(b). An alternative reading would render the inquiry under § 350(b) superfluous.

creditors." *Id.* That placed the motion to reopen within the heartland of § 350(b) since it was "well-recognized that a bankruptcy proceeding may be reopened to administer estate assets and to determine whether additional assets may be available for creditors of the estate." *Id.* BIW also cites *In re Lazy Days' RV Center*, 724 F.3d 418 (3d Cir. 2013), where, applying *Zinchiak*, this Court held that reopening was permissible because the bankruptcy court was better suited than the state court to resolve a motion filed by the debtors that directly impacted the debtors' contractual interests. *See id.* at 420–21, 423.

The facts of both cases distinguish BIW's motion. *Zinchiak* grounded its decision on "the potential to generate assets for the benefit of unsecured creditors of the Debtor's estate"—a "well-recognized" cause to reopen a bankruptcy. 406 F.3d at 224. *Lazy Days'* addressed a reopening motion filed by the reorganized debtors that directly impacted their own interests. *See* 724 F.3d at 420–21. That is not the case here. Congoleum is not part of this dispute, and there is no sign that any of its interests will be directly impacted by resolution of this question. Nor did BIW ask the bankruptcy judge for an interpretation of his "own order." *Zinchiak*, 406 F.3d at 224. The 2010 Confirmation Order was entered eleven years earlier by a district court judge who incorporated language from an order written four years prior by a different bankruptcy judge. So there is no comparative advantage in recency or unique insight.

Instead, BIW sought to reopen the bankruptcy for the "'sole' purpose of giving an opinion regarding the effect" of the prior bankruptcy order "which could then be submitted" to the ongoing proceedings in the district court. *In re Martin's Aquarium, Inc.*, 98 F. App'x 911, 913 (3d Cir. 2004). On these facts, we see no reason to deprive the

7

district court of its ordinary function to resolve legal questions that have no impact on a bankruptcy estate or the debtor's interests.[5]

**B.**

Our reading of precedent follows the best meaning of § 350(b)'s "other cause" provision. Section 350(b) arrived with the Bankruptcy Reform Act of 1978. But "[w]hen Congress enacted the present bankruptcy code in 1978, it did 'not write on a clean slate.'" *Harrington v. Purdue Pharma L.P.*, 144 S. Ct. 2071, 2086 (2024) (cleaned up) (quoting *Hall v. United States*, 566 U.S. 506, 523 (2012)). "Recognizing as much," the Supreme Court "has said that pre-code practice may sometimes inform our interpretation of the code's more 'ambiguous' provisions." *Id.* (quoting *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 649 (2012)).

Section 350(b)'s reopening power has its roots in the 1938 Chandler Act Amendments to the Bankruptcy Act of 1898. *See In re Dunning Bros. Co.*, 410 B.R. 877, 885 (Bankr. E.D. Cal. 2009). The Chandler Act expanded the previously narrow reopening power and permitted district court judges sitting in bankruptcy to "reopen estates for cause shown." An Act to Amend the Bankruptcy Act of 1898, Pub. L. No. 75–696, Ch. 2, § 2(8), 52 Stat. 840, 843 (1938). Courts understood "the discretion so vested . . . should be exercised only where extraordinary conditions are shown calling for such relief." *In re Ostermayer*, 74 F. Supp. 803, 804 (D.N.J. 1947). And "[n]o better cause

---

[5] *Zinchiak* and *Lazy Days'* also involved competing state and federal actions and so implicated the federal interest in administrating bankruptcy law. That is not a factor here.

could be shown than that the estate had not been fully administered," *Corn Exch. Bank Tr. Co. v. Empire Tr. Co.*, 206 F.2d 30, 33 (2d Cir. 1953), like when a debtor concealed assets in the original proceeding, *see, e.g.*, *In re Thomas*, 204 F.2d 788, 789–92 (7th Cir. 1953), or when assets were previously unreachable, *see, e.g.*, *In re Reid*, 198 F. Supp. 689, 692 (W.D. Va. 1961).[6]

This statutory history shows that the power to reopen "is broad, but not unlimited." *Hull v. Powell*, 309 F.2d 3, 4 (9th Cir. 1962). We have found no examples— and BIW, though given the opportunity through supplemental briefing, has identified none—of courts understanding the power to "reopen estates for cause shown" to encompass anything near the facts here: reopening a long-resolved bankruptcy to opine on a legal question surrounding an order by a different judge in a dispute between non-

---

[6] The 1973 Federal Bankruptcy Rules modified the language of the Chandler Act and adopted language nearly identical to § 350(b), permitting a case to be reopened "to administer assets, to accord relief to the bankrupt, or for other good cause." Bankr. R. 515 (1973). The advisory committee explained that the reformulation had a narrow purpose: to make clear that courts could reopen "for the benefit of the bankrupt," something courts had previously been "reluctant" to do under the Chandler Act. Bankr. R. 515 (1973) advisory committee's note.

The Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, 92 Stat. 2549, replaced the 1938 Amendments' "for cause shown" language with largely the language of Bankruptcy Rule 515. Under the 1978 Act, now codified in 11 U.S.C. § 350(b), a bankruptcy proceeding may be reopened "to administer assets, to accord relief to the debtor, or for other cause." § 350, 92 Stat. at 2569. Contemporary courts understood § 350(b) to have not changed the substantive law on reopening, instead understanding the law to merely incorporate the preexisting standard under the 1938 Amendments (as modified by the 1973 Rules). *See In re Montney*, 17 B.R. 353, 355 (Bankr. E.D. Mich. 1982) (discussing the relevant history and concluding that "[s]ection 350 of the Bankruptcy Code adopts Rule 515" and "[p]rior law has not been changed by the enactment of section 350"). Section 350(b) thus brought the old reopening soil with it into the new bankruptcy system. It merely incorporated the grounds for reopening recognized under the 1938 Amendments as modified by Rule 515.

debtors already pending before a federal district court where the answer will not impact the interests of the debtor or the administration of the estate. "[I]f Congress had meant to reshape traditional practice so profoundly in the present bankruptcy code, extending to courts the capacious new [reopening] power [BIW] claim[s], one might have expected it to say so expressly[.]" *Harrington*, 144 S. Ct. at 2086. On these facts, we do not find reopening within the Bankruptcy Court's authority.

* * *

Our opinions have not set out to create a comprehensive reopening test, and we do not attempt to do so here. To resolve this case, it is sufficient to determine that BIW has not met its burden to establish § 350(b)'s "for other cause" provision extends to this attempt to reopen a decade-old bankruptcy proceeding to resolve a dispute between non-debtors already pending before a federal district court, where the dispute does not impact the administration of the estate, the interests of the debtor, or even involve an order issued by the bankruptcy judge to whom the motion is directed. The parties remain free to litigate the force and effect of Paragraph 104 of the 2010 Confirmation Order in Occidental's suit, and so we express no view on the merits.

For these reasons, we will affirm the District Court's order.